ARMWOOD *v.* STATE

[No. 39, September Term, 1962.]

*Decided October 31, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*John D. Alexander, Jr.,* for appellant.

*Joseph S. Kaufman, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Don-*

nell, *State's Attorney,* and *Robert V. Lazzaro, Assistant State's Attorney,* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

Appellant, Charles Armwood, was tried without a jury in the Criminal Court of Baltimore in December, 1961, on a six count indictment for violation of the narcotics laws. The first three counts charged him with possession of a narcotic drug, having a narcotic drug under his control, and possession of narcotic paraphernalia. In the last three counts he was charged with these violations as a second offender, based upon a 1957 conviction under the narcotics laws.

Prior to trial appellant filed a motion to suppress evidence on the ground that a search of his apartment and the resulting seizure of narcotic drugs was illegal because it was done against his will and without his consent. The trial court reserved ruling on the motion pending the hearing of the testimony. At the conclusion of the testimony the motion to suppress was denied, as was a motion for a directed verdict. The verdict was guilty on the first (possession) and fourth (corresponding second offender) counts and appellant was sentenced to imprisonment. In this appeal he alleges error in denial of the motion to suppress evidence, and insufficiency of the evidence to convict him of possession of narcotics.

At about 2:30 A.M. on October 29, 1961, Officers Davis and Robinson of the Baltimore narcotics squad proceeded with other officers to 7 North Monroe Street for the purpose of placing the premises under surveillance. Officer Davis testified that information had been received from his superiors that "Sadie" Briscoe (a man), a known narcotics violator, was wanted by the police and that he was living with the appellant at 7 North Monroe Street. Shortly after arrival of the policemen, Armwood and Rose Briscoe, the sister of "Sadie" Briscoe, left the house, saw the officers and ran down an alley. The officers knew Armwood, and he knew at least some of them. The officers pursued the appellant and one of them yelled to him to halt, which he did. They approached him "to question him as to his actions and as to why he ran," and said they neither touched nor

searched him at that time. One of the officers said to appellant "* * * we are in receipt of information that you just got some stuff [meaning heroin] and that you live at 7 North Monroe Street." Thereupon, according to the officers, appellant made a gesture and said, "All right, you have got me." He admitted having a room at 7 North Monroe Street and said "I will take you up there and I will show it to you." One of the officers testified that the appellant said he "wanted a break at that time." The officers accompanied Armwood back to 7 North Monroe where they had to ring the bell and knock on the door because he did not have a key. The second floor tenant admitted them and the officers said the appellant invited them to the third floor. According to the officers Armwood pushed open the unlocked door to his room and pointed to a woman's purse on the bed, in which the policemen found a substantial quantity of heroin, two eye droppers, one hypodermic needle and one burnt bottle top wrapped in tinfoil. The officers took possession of the narcotics and paraphernalia. When appellant was questioned further, he stated that he had gone to a hotel in the city where he had received the narcotics from a dope peddler on consignment. Officer Davis testified that Armwood was not arrested until the officers were inside the apartment and the narcotics had been found in the purse. A previous narcotics violation by Armwood was proved in the case. He did not take the stand, and the officers' testimony that he invited them to go to his apartment and pointed out the purse containing the narcotics and paraphernalia was not contradicted.

In urging that his motion to suppress the evidence found by the officers should have been granted, appellant contends that the officers' behavior in the alley was sufficient to constitute an arrest, and that the arrest was illegal. He maintains that under the circumstances as they occurred the apparent consent which he gave to the search did not amount to free and voluntary consent, but rather was submission to authority, and that therefore the evidence was inadmissible.

In our view of the case we need not determine whether the occurrences in the alley amounted to an accosting, a detention for questioning without a formal arrest, or an arrest, lawful or unlawful. (For a thorough discussion by Chief Judge Brune

for the Court of the distinctions between them, see *Price v. State,* 227 Md. 28, 175 A. 2d 11 (1962)). For, even if we assume, without deciding, that an illegal arrest occurred in the alley, it does not follow that the search of the apartment was unlawful. It is well established in this State that the fact that an arrest was illegal does not make a subsequent search unlawful and the evidence obtained thereby inadmissible if the accused voluntarily consented to the search. *Payne v. State,* 207 Md. 51, 113 A. 2d 93 (1955). A defendant cannot complain of a search to which he freely consented. *Shields v. State,* 229 Md. 153, 182 A. 2d 348 (1962) ; *Lyles v. State,* 203 Md. 605, 102 A. 2d 291 (1954) ; *Robinson v. State,* 200 Md. 128, 88 A. 2d 310 (1952) ; *Reed v. State,* 197 Md. 540, 79 A. 2d 852 (1951).

We think the case of *Payne v. State, supra,* is closely in point and controls the question before us. In that case officers saw a woman place lottery slips in a garbage can outside her house, from which the defendant had departed shortly before. An officer found the defendant several blocks away and demanded that he return to the house. There, the woman said the defendant had some lottery slips concealed on his person, and when one of the officers asked leave to search him, he agreed and the slips were found. There, as here, the defendant contended that he was illegally arrested on the street and that his ostensible consent to the search in the house was not actual consent but was submission to authority. The opinion reviewed the Maryland decisions, such as *Blager v. State,* 162 Md. 664, 161 Atl. 1 (1932) ; *Courtney v. State,* 187 Md. 1, 48 A. 2d 430 (1946) ; and *Hubbard v. State,* 195 Md. 103, 72 A. 2d 733 (1950), and found that there was no evidence in the case of coercion or duress strong enough to require the Court to rule as a matter of law that the trier of the facts should not have passed on whether the consent was voluntary or not. The Court held that it could not say the trial court's decision that consent was voluntary was wrong, and hence the evidence which the search produced was determined to be admissible.

We find that the situation in the case before us is the same. Certainly, there was no evidence of coercion or duress strong enough to *require* the trial court to rule as a matter of law that the appellant's consent was not voluntary. Even if the

appellant was under the impression that he was under arrest at the time he halted in the alley, he was under no obligation to take the officers to his apartment and proffer the contraband to them. If he had merely remained silent he would have been immune from any police interference until a warrant had been procured. See *Cornish v. State,* 215 Md. 64, 69, 137 A. 2d 170 (1957), citing *Blager v. State, supra.* On the other hand, there was evidence which, if believed, was sufficient to support an inference that appellant chose to consent voluntarily to a search of his premises in the hope that his cooperation might gain him a "break". Under these circumstances the determination as to whether the search was permissive was for the trier of the facts, and unless we find it to have been clearly erroneous, which we do not, we may not substitute our judgment for his. See *Shields v. State, supra; Lyles v. State, supra.*

We have found no decision of the Supreme Court of the United States which would require a different conclusion. *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, is not in point under the facts of this case.

Appellant's second contention, that the evidence was insufficient to convict him of possession of narcotics, is without merit. He admitted that the third floor apartment at 7 North Monroe Street was his residence and there is no showing that any other person had an interest in it. Under these circumstances, his admission of receiving narcotics from a drug peddler at a hotel in the city and his pointing to the purse containing the incriminating evidence, after the officers were in the room, are sufficient to indicate that he had at least constructive possession of the narcotics seized. Appellant's argument that the mere fact that narcotics were found in his apartment does not establish beyond a reasonable doubt that he put them there or that they were in his possession is without force. See *Mazer v. State,* 212 Md. 60, 127 A. 2d 630 (1956) ; *Dodson v. State,* 213 Md. 13, 130 A. 2d 728 (1957). The question of reasonable doubt is for the trier of fact. Our function is merely to decide whether there was sufficient evidence from which the trier of the facts could properly draw the conclusion of guilt beyond a reasonable doubt. *Basoff v. State,* 208 Md. 643, 119

A. 2d 917 (1956); *Berry v. State,* 202 Md. 62, 67, 95 A. 2d 319 (1953).

Having found no error below, we will affirm.

*Judgment affirmed.*