## DAILEY *v.* STATE

[No. 197, September Term, 1963.]

*Decided April 8, 1964.*

The cause originally was argued before Brune, C. J., and Henderson, Prescott, Horney and Sybert, JJ., and reargued before the full Court.

*George L. Russell, Jr.* (on both arguments), with whom was *Llewellyn W. Woolford* on the brief, for the appellant.

*Mathias J. DeVito, Assistant Attorney General* (on both arguments), with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *Stanley S. Cohen, Assistant State's Attorney,* on the brief, for the appellee.

Henderson, J., delivered the opinion of the Court.

The appellant was convicted, in a non-jury case, under eleven indictments charging separate statutory burglaries and attempted burglaries. The court sentenced him to ten years on indictment 1336, and to two years on each of the other indictments to run concurrently with the initial sentence. This appeal is from each of those judgments.

328

The facts are virtually undisputed. On March 23, 1963, at about 11 P.M. a burglar alarm installed in the premises of the American Express Company at 213 North Charles Street was set off. A special officer of the company that installed the alarm, together with officers of the Baltimore police force, went immediately to the premises and entered the front door. The special officer testified: "We heard * * * glass shatter and we figured we had someone trapped in the rear of the premises where their safe is." However, the intruder got away. The police found a window broken in the rear. One of the bars across the window had been sawed through. On a desk counter near the safe they found a crow bar. Outside the window in an areaway, they found a man's coat in the pocket of which was a case containing two keys. They also found a kit of tools including a hacksaw, vise grippers, a mall with taped handles and a candle. Nothing appeared to have been taken from the premises, undoubtedly because of the interruption.

The police concluded that the owner of the keys resided in a rooming house in the vicinity. Sergeant McKew testified as to his reasons for drawing the inference. He said there had been reports of a series of some twenty-five burglaries or attempted burglaries in the neighborhood comprising an area of some eight square blocks, in which the method of operation had been the same. The keys were obviously not automobile keys, and one of them was stamped with the number 5. He reasoned that this key afforded entrance to a room, and the larger key to an outer door. This suggested a rooming house of which there were twelve in the area. On motion, the court struck out this testimony. However, it was shown that the police proceeded diligently to try the large key in the outer doors of the various rooming houses and at about 12:30 A.M. found that it fitted the door of 115 W. Mulberry Street, about two or three blocks from the scene of the crime. They went to room 5 and knocked but received no answer. They tried the key numbered 5 and it opened the door.

The appellant was in bed, apparently asleep. One of the police took a loaded pistol that was lying on a bedside table. Sergeant McKew "instructed the subject to get out of bed." The appellant said: "How did you find me so fast?" He admitted he left his coat "up there" but "there was no identifica-

tion." While he was getting dressed, Sergeant McKew asked "if we could search his room." He said: "you have me, you just as well do it * * * take anything you want * * * do me a favor, take everything in here into the station house and I will know where it is." The police took him and his goods to the station house, although they had no arrest warrant or search warrant. Some of the articles were subsequently identified as having been taken in previous burglaries.

At the station house at about 1:15 A.M. the appellant was questioned. He said he had recently been released from prison in Ohio, and had set up an operation in that State. When things "got hot" he moved to Baltimore. He readily admitted that he had made some fifteen entries in the neighborhood of his rooming house. He admitted having entered the premises of the American Express Company and dropping his coat and tools in his haste to leave when he heard a noise at the front door. He gave a full oral statement which was reduced to writing but not signed by him. This statement was offered in evidence without objection as to form and "not on the ground it was not voluntarily given." The sole objection was on the ground that it was the "fruit" of an illegal arrest. In it the appellant described his method of operation in detail. His objective in each case was the safe in a shop or store. In most cases he took only cash, although in the case covered by indictment No. 1336 he also took a desk ornament of no particular value. However, some of the articles taken from his room were put in evidence over objection under indictments 1336, 1341 and 1348. Under the other indictments no tangible evidence was introduced, although there was either proof of the *corpus delicti* or a stipulation as to the facts in each case. The appellant did not take the stand.

The appellant refers in his brief to an "attempted burglary" at 213 North Charles Street. This would be a misdemeanor. *Tillett v. Warden,* 215 Md. 596, 597. It seems clear, however, that the crime committed at that location was more than attempt. The fact that nothing was taken is not controlling, *Ridley v. State,* 228 Md. 281, 282. Cf. *Wallace v. State,* 231 Md. 517, 519, and *McNeil v. State,* 227 Md. 298, 300. The inference that he intended to take the contents of the safe seems inescapable.

Breaking and entering a storehouse is not a common law offense, but is covered by three statutory provisions, Code (1957 ed. and 1963 Supp.), Art. 27, secs. 32, 33 and 342. *Wersten v. State,* 232 Md. 164, 165. Sec. 33 is inapplicable here, since there was no stealing. Sec. 342 expressly makes it a misdemeanor to break and enter a storehouse with intent to steal property worth less than $100.00. The maximum penalty is eighteen months. Sec. 32 fixes a maximum penalty of ten years in the penitentiary for breaking and entering a storehouse with intent to steal property worth $100.00 or more. It is well settled that this offense, too, is only a misdemeanor. *Kares v. State,* 215 Md. 396, 397, and cases cited. See also *Price v. State,* 227 Md. 28, 35.

The record shows that in indictment No. 1347, which charged the entry at 213 North Charles Street, the trial court found him guilty generally and imposed a two year sentence. Doubtless it would have been better practice to have found him not guilty on the second count. *Wersten v. State, supra.* But no question as to the validity of the sentence was raised below, and the point is not before us. *Bell v. State,* 220 Md. 75, 81; *Hardesty v. State,* 223 Md. 559, 562. The trial court could properly find from the evidence that the appellant was guilty under the first count, of breaking and entering a storehouse with intent to steal property worth $100.00 or more, and impose a two year sentence as he did.

The State concedes that the police had no right to enter the appellant's room and arrest him for a misdemeanor not committed in their presence, even though they may have had probable cause to believe that the occupant was the person who had entered the premises at 213 North Charles Street, and even though this might have been sufficient to justify an arrest, had the breaking and entering constituted a felony. Cf. *Price v. State, supra,* and *Buettner v. State,* 233 Md. 235, 239. The State attempts, however, to bring this case within the exception to the rule that evidence obtained in an illegal search is inadmissible (the exclusionary rule prescribed by *Mapp v. Ohio,* 367 U. S. 643, see *Belton v. State,* 228 Md. 17) by contending that the appellant consented to the search. See *Armwood v. State,* 229 Md. 565, and cases there cited. Cf. *Bellam v. State,* 233 Md. 368.

There is force in the appellant's contention that the alleged consent was not voluntary, and that the appellant merely acquiesced in the seizure following the illegal entry and arrest as an inevitable consequence. It does not appear that any of the articles seized were concealed. Nor does it appear that the police knew at that time that the articles in the room had been stolen. Obviously they were not contraband. But in any event we think the fact that the police were trespassers at the time of the alleged consent would make the evidence inadmissible. We have repeatedly held that trespassing officers who observe a misdemeanor committed in their presence cannot rely upon this exception to support the introduction of evidence obtained while they were in the position of lawbreakers. See *Beale v. State,* 230 Md. 182, 185, and cases cited. Cf. *Gault v. State,* 231 Md. 78, 81. By analogy, we think the same thing should be true of the exception based on consent. The exclusionary rule is to a considerable extent predicated upon the assumed necessity of imposing a penalty for wrongful police action to prevent its repetition. In *Wong Sun v. U. S.,* 371 U. S. 471, 485, (if applicable at all in a State prosecution) evidence obtained when narcotics agents broke into the room of an accused was ruled inadmissible as being the fruit of a wrongful act, even though the agents had probable cause to suspect his possession of narcotics. We think the *Armwood* case, and the cases there cited, are distinguishable by the fact that the arrests in each case, although illegal, were made on neutral ground, and the consent given was not the direct consequence or "fruit" of a wrongful act.

It follows that the convictions in indictments No. 1336, 1341 and 1348 must be reversed and remanded for a new trial. Since no tangible evidence was introduced in the other indictments, we are faced with the question as to the admissibility of the appellant's statement, made some time later, at the police station, concerning burglaries other than the one committed at 213 North Charles Street. The appellant contends that it was rendered inadmissible by the fact that he was under an illegal arrest at the time it was made.

On this point we think the late case of *Peal v. State,* 232 Md. 329, 332 is controlling. See also *Stewart v. State,* 232 Md. 318, *Stevens v. State,* 232 Md. 33, 38, and *Prescoe v. State,* 231 Md.

486. The express concession that the confession was voluntary made it admissible for the reasons stated in those cases. We see no need to elaborate. We find nothing to the contrary in *Fahy v. Conn.*, 375 U. S. 85. That case turned on a question of whether the admission of tangible evidence, illegally seized and erroneously admitted, could be treated as harmless error as the Connecticut court had held. The Supreme Court held that it could not. It was said that the appellant, who had been tried pre-*Mapp*, should have an opportunity to show on a retrial that he had been induced to confess that he painted the forbidden signs when confronted with a paint can and brush found in his car near the scene as a result of an admittedly illegal search.

The case is distinguishable on several grounds. In the instant post-*Mapp* case, there is no contention that the confession was induced by the tangible evidence admitted. The confession went to the obtaining of large sums in cash by safe-cracking. In eight of the crimes confessed to no tangible property was taken or introduced. It is quite clear that the evidence of the confession plus the proof or stipulation of the *corpus delicti* in these cases was sufficient to permit the findings of guilt by the trier of the facts.

For the reasons stated we shall affirm the judgments in some of the indictments and reverse and remand in the others.

> *Judgments in Indictments No. 1336, 1341, 1348 reversed and remanded for a new trial.*

> *Judgments in Indictments No. 1338, 1339, 1340, 1343, 1344, 1345, 1346 and 1347 affirmed.*

BRUNE, C. J., filed the following separate opinion, concurring in part and dissenting in part.

With regard to the judgments upon Indictments Nos. 1336, 1341 and 1348, I concur in the opinion of the court.

With regard to the judgments upon Indictments Nos. 1338, 1339 and 1340 and Nos. 1343-1347 (inclusive), I dissent for substantially the same reason which is stated in my dissents in *Prescoe v. State,* 231 Md. 486, 495, 191 A. 2d 226, in *Stewart v. State,* 232 Md. 318, 326, 193 A. 2d 40, and in *Peal v. State,*

232 Md. 329, 334, 193 A. 2d 53.[1] This is, in brief, that the confessions here were the product of an illegal arrest and hence, in my view, were inadmissible under *Mapp v. Ohio,* 367 U. S. 643, and *Wong Sun v. United States,* 371 U. S. 471. And see *Fahy v. Connecticut,* 375 U. S. 85, where evidence obtained by an unlawful search and seizure may have induced a confession and it was held that its admission could not be treated as non-prejudicial.

Here the appellant was arrested at about 12:30 A.M. and the questioning which produced his admissions began while he was in custody at a police station at about 1:15 A.M. of the same day. Any "taint" from the concededly illegal arrest could not, I think, have become so attenuated (see *Wong Sun,* 371 U. S. at 491) as to have been dissipated when the questioning occurred.

---

1. I now understand that in none of the cases cited above which have previously been decided by this Court, has review by the Supreme Court been sought, despite prior intimations to the contrary, at least as to *Prescoe,* which were referred to in my dissent in *Stewart.*