## McCHAN, JONES, BETHEA, GRIFFIN AND SHELLY *v.* STATE

[No. 199, September Term, 1964.]

150

*Decided March 15, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and BARNES, JJ.

*George L. Russell, Jr.,* with whom was *Milton B. Allen* on the brief, for appellant George McChan.

*Alvin Solomon* for appellant Major Kenneth Jones.

*Arthur W. Kupfer* for appellant Willie Fred Bethea.

*Abraham L. Adler* for appellant Robert Paige Griffin.

*Joel Margolis* for appellant Charles Douglas Shelly.

*Julius A. Romano, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

These prosecutions for armed robbery and other offenses incident thereto arose out of a series of five holdups of liquor dispensing establishments in Baltimore City committed within less

than a fortnight at the end of 1963 and the beginning of 1964. All five of the appellants—George M. McChan, Major K. Jones, Robert P. Griffin, Willie F. Bethea and Charles D. Shelly— were convicted of one or more of the crimes charged in eleven indictments, and all have appealed.

All of the holdups followed a pattern in that the participants were colored men wearing black scarves as a mask with one of them (though not always the same one) carrying a single-bar-relled shotgun. On December 27, 1963, Howard's Liquor Store was robbed by two men. On January 1, 1964, Eddie's Cafe was robbed by three men. On January 2, Lou's Liquor Store was robbed by three men. Later that same night the Ensor Lounge was robbed by three men. And on January 9 an attempt was made by two men to rob Howard's Liquor Store again. On this occasion, an employee of the store shot one of the robbers and the robber with the shotgun fired in the direction of one of the employees. Although the wounded man escaped, he was appre-hended a short distance from the scene of the attempted rob-bery.

As a result of the first holdup of Howard's Liquor Store, McChan, Jones and Griffin were charged (under indictment numbered 234) with armed robbery. Jones was found guilty. McChan and Griffin were found not guilty. McChan was also charged (under indictment numbered 236) with carrying a deadly weapon, but was found not guilty. As a result of the holdup of Eddie's Cafe, McChan, Jones and Griffin were charged (under indictment numbered 233) with armed robbery and Mc-Chan was separately charged (under indictment numbered 237) with carrying a deadly weapon. All were found guilty of armed robbery. On the theory that there had been a merger of offenses, McChan was found not guilty under the separate indictment.[1] As a result of the holdup of Lou's Liquor Store, all of the appellants were charged (under indictment numbered 230) with armed robbery and were found guilty. As before, the separate deadly weapon charge against McChan (under indictment num-

---

1. No question as to whether the charge of carrying a concealed weapon "merged" with the charge of armed robbery is raised on this appeal. See *Veney v. State,* 227 Md. 608.

bered 235) was held to have merged with the armed robbery charge. As a result of the holdup of the Ensor Lounge, all of the appellants were charged (under indictment numbered 228) with armed robbery and were found guilty and McChan was found not guilty (under the separate indictment numbered 238) of the deadly weapon charge. As a result of the attempt to rob Howard's Liquor Store a second time, Jones, Griffin and Bethea were charged (under indictment numbered 229) with attempted armed robbery. Griffin was found not guilty. Jones and Bethea were found guilty. Bethea was charged (under indictment numbered 231) with an assault with intent to murder and (under indictment numbered 232) with carrying a deadly weapon, and was found not guilty on both charges.

While Officer Arnold was patrolling his post in the vicinity of the attempted holdup of Howard's Liquor Store he heard what sounded like a shotgun blast. As he continued walking in the direction from which the sound came, the officer saw a man (later identified as Jones) running towards him. When the man saw the officer, he slowed to a walk and crossed to the other side of the street. The officer also crossed the street, spoke to the man, and noticing that a wound on his head was bleeding, suggested that he retrace his steps. On arriving at the scene of the holdup, the officer learned that there had been an attempted robbery, and, seeing blood in the area of his abdomen, asked the man if he had been shot. He indicated that he had been and was taken by the officer in a police car to a hospital where he was treated for the abdominal wound. He remained there for a week. During a part of that time his condition was serious.

At the scene, Lieutenant Goodrich and Sergeant Adams learned that both participants had their faces covered with black bandannas or scarves and that the one who was not immediately apprehended weighed over 150 pounds, was 25 to 30 years old, was about $5\frac{1}{2}$ feet tall and was wearing a long dark car coat. Later, the investigating officers went to the hospital to question the one who had been shot, but he refused to give them his name or address or any other information. Thereafter, having returned to the police station, the police continued the interrogation of those who had witnessed the attempted robbery, includ-

ing McChan, who, it appeared, was a customer at the time of the holdup.

During the course of the continuing investigation, the police received an anonymous telephone call implicating Bethea as the participant who got away as well as information as to where he lived. The police proceeded forthwith to investigate the tip. When they arrived at the address given, one officer went to the rear of the house. When one of the other officers knocked on the front door, a man, fitting the general description the police had previously received of the other participant, appeared at a second story window with a black scarf on his head. On seeing the police, he came downstairs without the scarf and opened the door. It was Bethea. He was taken to the police station for questioning. On arriving there and before entering, Bethea informed the police that the robbery weapon had been hidden in the apartment of McChan (a relative of his) and went with the police to the apartment. McChan, who had been previously questioned and released as a witness, was at home, and the police, claiming he granted permission, entered the apartment and searched it. They found the wooden part of the shotgun (hereinafter referred to as "the wooden part") concealed behind a cabinet in the kitchen and McChan was arrested forthwith. When the police inquired of him as to the whereabouts of the other parts of the shotgun, he told them they could have been taken by one of several recent visitors, including Griffin, and directed the police to a nearby garage where they found Griffin asleep in an automobile. He was also arrested without a warrant. After their arrest, Griffin and Bethea informed the police that Shelly had participated in one or more of the holdups either as a lookout or as a driver of the automobile they used as a conveyance. Shelly, as were all other participants, was also arrested without a warrant before the end of the day (January 9, 1964) on which the last crime— the second holdup of Howard's Liquor Store—was committed.

All of the appellants, except Jones, made one or more extrajudicial statements to the police either on the day of the arrests or sometime during the two following days. The Jones statement was made after he was discharged from the hospital a week later. Besides the oral statement to the police on January

9 concerning the whereabouts of the shotgun used in the hold-ups, Bethea made three other statements. In his first written statement, made the same day as the oral statement, he admitted that he was the lookout man at the Ensor Lounge hold-up committed by McChan, Griffin and Jones and received a part of the money taken. In the second written statement made on January 10, Bethea, besides restating his participation in the Ensor Lounge robbery, admitted that he was also the lookout at the holdup of Lou's Liquor Store carried out by McChan, Griffin and Jones. Bethea made another statement on January 11 but it was not admitted in evidence. Griffin made two written statements on January 9. In the first one, he admitted that he participated with McChan and Jones in the holdup of Eddie's Cafe. In the second statement, he admitted that he also participated in the holdups at Lou's Liquor Store and the Ensor Lounge with McChan, Jones, Bethea and Shelly. A third statement made by Griffin on January 11 was not admitted in evidence. Shelly admitted in a statement made on January 10 that he had participated (as the driver of the automobile) in the holdups of Lou's Liquor Store and the Ensor Lounge. In the statement he made on January 11, McChan admitted participating in the holdups of Eddie's Cafe, the Ensor Lounge and Lou's Liquor Store. He also admitted having possession of the shotgun but claimed it belonged to Jones. The complete statement made by Jones on January 16 was not admitted in evidence but (by agreement of the parties) three of the five parts of the statement were read into the record. Therein, Jones admitted his participation in the holdups at Eddie's Cafe, the Ensor Lounge and Lou's Liquor Store.

After the arrest of the appellants, and before some of the statements of the arrestees had been taken, the police entered the rear yard of the premises in which McChan had an apartment, and, without a warrant, searched for and seized the two missing parts of the shotgun, which, when assembled with the wooden part found in the apartment, made a complete shotgun. No part of the shotgun had been recovered when Bethea made the oral statement to the police. Nor was any part of the weapon exhibited to Jones while he was making his statement. But the wooden part was shown to Bethea during the taking of

his first and second written statements; to Griffin when he was making his first and second statements; and to Shelly when he was giving his statement to the police. The reassembled shotgun was exhibited to Bethea and Griffin when they made their last statements and at the time McChan was giving his statement to the police.

Although McChan moved for a severance at the same time he moved for the exclusion of all witnesses, including the three codefendants he intended to call as defense witnesses, the motions were denied and all five defendants were tried together by the lower court (Harris, J.) sitting without a jury. At the outset of the trial, all appellants moved to suppress all evidence obtained from them after their allegedly illegal arrests and as the result of the alleged unlawful searches for and seizures of the constituent parts of the shotgun. Each of the appellants (on the ground they were involuntarily made) also objected to the admission in evidence of the statement or statements they had given the police after they were arrested.

As to the arrests, the court ruled that there was reasonable grounds or probable cause for the arrest of all appellants, except that of Griffin which it held to be illegal. As to the searches and seizures, the court, finding that the search of the apartment was permissive, held that the seizure of the wooden part was lawful, but it was never offered in evidence. And the court, holding that the search for and seizure of the other parts of the shotgun without a warrant was unlawful, excluded them as evidence. As a result none of the tangible evidence seized was ever admitted in evidence. As to the extrajudicial confessions, the court, finding that Griffin and Bethea had been confronted with the reassembled shotgun during the time they were making their last confessions, ruled that they were inadmissible. Finally, the court, having heard the evidence of the State as well as the appellants concerning the purported voluntary and involuntary character of the other confessions, concluded that they had been freely and voluntarily given and were therefore admissible evidence.

While there are other contentions to be decided when we consider the cases against the appellants separately, it is apparent that the most important questions (which are common to most

of the cases) concern the legality of the arrests, the lawfulness of the searches and seizures and the admissibility of the extra-judicial confessions. We shall therefore examine the applicable law on these points first and apply it to the particular facts of the cases against each of the appellants as circumstances may require.

## Concerning the Arrests

The invariable rule is that a police officer without a warrant lacks authority to make an arrest in a felony case unless he has reasonable grounds or probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested had committed the offense. *Murray v. State,* 236 Md. 375, 203 A. 2d 908 (1964) ; *Young v. State,* 234 Md. 125, 198 A. 2d 91 (1964) ; *Edwardsen v. State,* 231 Md. 332, 190 A. 2d 84 (1963) ; *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80 (1960). As was pointed out in *Young,* at p. 129 (as well as in *Edwardsen* and *Mulchay*), reasonable grounds or probable cause "exists when the facts and circumstances within the knowledge of the officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious man believing that a felony had been committed." Necessarily therefore, the question as to whether or not a person was lawfully arrested depends on the facts and circumstances in each case.

An arrest has been defined as "the detention of a known or suspected offender for the purpose of prosecuting him for a crime." *Cornish v. State,* 215 Md. 64, 67, 137 A. 2d 170, 172 (1957). As that case points out there is a detention only when there is a touching by the arrestor or when the arrestee is told that he is under arrest and submits. Where there is no touching, the intention of the arrestor and the understanding of the arrestee are determinative, for in order for there to be an arrest in such case, there must always be an intent on the part of one to arrest the other and an intent on the part of such other to submit. When one is approached by a police officer and merely questioned as to his identity and actions, this is only an accosting and not an arrest. See also Kauffman, *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 131 ; 5 Am.Jur.2d, *Arrest,* § 1 ; 6 C.J.S., *Arrest,* § 1.

## Concerning the Searches and Seizures

There is, of course, no constitutional prohibition against search and seizure: the only requirement is that they must not be unreasonable. *Amendment IV of the Constitution of the United States; Article 26 of the Maryland Declaration of Rights.* Whether or not a search is unreasonable depends on the facts and circumstances in each case and is a question for the courts to decide. The general rule is that the search of a person or his property without a warrant and the seizure of things which are evidence of the commission of a crime is unreasonable and therefore unlawful. *Buettner v. State,* 233 Md. 235, 196 A. 2d 465 (1964) ; *Agnello v. United States,* 269 U. S. 20 (1925). But there are well recognized exceptions to the genral rule. The search of a person without a warrant incident to a lawful arrest is not unreasonable. *Gross v. State,* 235 Md. 429, 201 A. 2d 808 (1964). And under some circumstances a search of one's property may be made without a warrant as, for example, when the search is permissive. *Armwood v. State,* 229 Md. 565, 185 A. 2d 357 (1962). Moreover, the right of immunity from unreasonable search and seizure is personal and one who disclaims ownership or other possessory interest has no right to protest the legality of a search and seizure. *Carter v. State,* 236 Md. 450, 204 A. 2d 322 (1964).

## Concerning the Extrajudicial Confessions

While two somewhat unusual factors concerning the admissibility of confessions are presented by these cases and must be considered, the ultimate test of admissibility, as it has always been, is still whether or not the confessions were freely and voluntarily made. *Abbott v. State,* 231 Md. 462, 190 A. 2d 797 (1963) ; *Bryant v. State,* 229 Md. 531, 185 A. 2d 190 (1962) ; *Culombe v. Connecticut,* 367 U. S. 568 (1961). In addition to the standard factors as to whether the confessions were the product of force or of a promise, threat or inducement, there are inquiries here as to whether a confession made after an illegal arrest should be excluded as evidence regardless of its voluntary character, and as to whether the presence of unlawfully seized evidence when a confession is taken would preclude its use as evidence.

The first question is not a new one in this Court. *Prescoe v. State,* 231 Md. 486, 191 A. 2d 226 (1963) as well as *Peal v. State,* 232 Md. 329, 193 A. 2d 53 (1963) and *Stewart v. State,* 235 Md. 210, 201 A. 2d 18 (1964), held that an illegal arrest does not in itself render a subsequent confession involuntary. Most recently, in *Mefford and Blackburn v. State,* 235 Md. 497, 511, 201 A. 2d 824, 831 (1964), it was said that *Wong Sun v. United State,* 371 U. S. 471 (1963) "was not intended to, and does not, control prosecutions in State courts and that the rule of the Supreme Court * * * and that of Maryland remains that the critical test of admissibility of a confession is whether, under all circumstances, it was, in actuality, voluntary." The cases in other jurisdictions, such as *State v. Traub,* 196 A. 2d 755 (Conn. 1963), *cert.dcn.* 377 U. S. 960 (1964) and *State v. Jackson,* 203 A. 2d 1 (N. J. 1964), are to the same effect. The second question, as to what effect confrontation with illegally seized evidence has on the admissibility of a confession is a novel one in this Court, but, like the first, the question is one of fact and not a matter of law. In *Fahy v. Connecticut,* 375 U. S. 85 (1963), where illegally obtained evidence was held to be prejudicial, the Supreme Court found that the accused should have had an opportunity to show that his admissions were induced by being confronted with illegally obtained evidence. *Fahy,* does not, however, compel the exclusion of a confession unless it appears that the accused was shown illegally seized evidence and that such confrontation did in fact induce the confession. Voluntariness, therefore, is still the crucial test for determining the admissibility of a confession.

Lastly, the credibility of witnesses is primarily for the trial judge to determine. And, where the trial judge believes that a confession was freely and voluntarily made, his finding will not be disturbed unless there was a clear abuse of discretion. *Abbott v. State, supra.*

### The Cases Against McChan

It is the contention of this appellant that the trial court erred in denying his motion for a severance. And, although his motion to exclude witnesses was granted, he also contends that the denial of severance amounted to a denial of his motion to ex-

clude witnesses in that the denial of severance prevented the exclusion of three of the codefendants who were his only witnesses. Other errors are claimed by the refusal of the court to exclude evidence relating to the searches and seizures, his arrest, and the statements and confessions made by himself and the codefendants. The propriety of admitting his confession as evidence is also questioned.

Except insofar as they may be indirectly answered elsewhere in this opinion, we need not answer any of the questions presented here other than those concerning severance and the exclusion of witnesses. As to these it is apparent that the motions for severance should have been granted. This is so because this appellant was put on trial with his codefendants in four cases in which he was charged jointly with at least two of the other defendants, and in three cases in which he was not charged at all, in violation of Maryland Rule 734. See *Lewis v. State,* 235 Md. 588, 202 A. 2d 370 (1964), decided after the trial of these cases below.

We must therefore reverse the judgments of conviction against McChan and remand the cases for new trials.

### The Cases Against Jones

This appellant questions the legality of his arrest, the voluntariness of his confession, the sufficiency of the evidence and the absence of counsel at the taking of his confession.

Claiming that the arrest took place when the police officer spoke to him as he was running away from the scene of the attempted holdup and suggested that he retrace his steps, it is contended that the officer had neither witnessed a misdemeanor being committed in his presence nor had probable cause to believe that a felony was being or had been committed at the time of the arrest. We think this was no more than an accosting and that the appellant was not placed under arrest until he was taken to the hospital and placed under police guard. At no time was there a touching and he was never told that he was under arrest. While he may have thought that he was under arrest when he was stopped and returned to the scene at the suggestion of the officer, he was not actually arrested until he was taken to the hospital to be treated for his injuries. See *Cornish v. State,*

*supra.* We think there was sufficient probable cause for the police officer to believe that a felony had been committed and that the appellant had committed it. When the officer arrived at the scene, he not only learned of the abortive holdup but observed that the appellant was bleeding in the area of his abdomen as well as from the wound on his head. This, coupled with the flight of the appellant from the scene of the holdup and the subsequent refusal to say what had happened other than to indicate that he had been shot, was ample probable cause for the arrest. *Young v. State, supra.* The arrest was therefore legal.

We must, nevertheless, determine whether the confession was freely and voluntarily made. On the day he was released from the hospital, the appellant, who was still in pain, was interrogated at the police station. The interrogation was begun in an overheated room but this condition was soon remedied. During the questioning, which lasted about three hours, the police, who were aware that the appellant was uncomfortable because of pain, offered to discontinue the taking of his confession, but the offer was declined and the questioning was continued. At the preliminary hearing, the interrogating officers testified that they used no force and made no promise or inducement to obtain the confession and denied making a threat to withhold medical treatment until he confessed. To the contrary, the appellant testified that the officers had kept on with the questioning despite his condition and indicated an intention to continue until he signed a statement. The appellant was never confronted with the robbery weapon or any part of it while the confession was being taken. Nor was he aware at that time of the fact that some of his codefendants had implicated him in their statements to the police. On this testimony the trial court found that the confession was voluntary and we cannot say, since there was here no showing that the will of the confessor was so overpowered as to render the confession involuntary, that the finding was clearly erroneous. *Green v. State,* 236 Md. 334, 203 A. 2d 870 (1964).

Even without the confession there was ample legally sufficient evidence from which the trial court could have been convinced beyond a reasonable doubt that this appellant had participated in the attempted robbery as well as the prior robbery of How-

ard's Liquor Store. An employee who had witnessed both crimes identified the appellant as one of the participants in both offenses. Identification by a single eyewitness is sufficient to convict. *Coates v. State,* 232 Md. 72, 191 A. 2d 579 (1963).

The final contention of the appellant that he was not afforded counsel at the taking of his confession has no merit. He makes no claim, nor does the record indicate, that counsel had either been retained or requested at that time. Furthermore, he was advised of his right to remain silent. See *Mefford and Blackburn, supra.* Under these circumstances, *Escobedo v. Illinois,* 378 U. S. 478 (1964), which he cites as authority for the claim, is not applicable. The mere fact that an accused was without counsel at the time he made a confession would not of itself render the confession inadmissible. *Bagley v. State,* 232 Md. 86, 192 A. 2d 53 (1963).

### The Cases Against Griffin

The contention of this appellant that his first and second confessions should not have been admitted in evidence has two thrusts. The first is that since his arrest was illegal his confessions were thereby rendered inadmissible. The second is that his confessions were involuntary and therefore inadmissible.

The trial court found that the arrest was without probable cause and therefore illegal. At the hearing on the motions to suppress evidence, the court excluded the last (or third) confession of this appellant because it found his confrontation with the fully assembled shotgun (the second and third parts of which had been unlawfully seized) had in fact induced him to make that confession. But the court apparently refused to exclude the first and second confessions as evidence because, having found that the seizure of the wooden part of the shotgun was permissive, the appellant (who claimed no ownership or other possessory interest in the shotgun) was without a right to complain about the confrontation.

First, this appellant, relying on *Wong Sun v. United States, supra* (as well as the dissenting opinion of Chief Judge Brune in *Prescoe v. State, supra,* and *Peal v. State, supra*), contends that since his arrest was illegal all "fruits" of the arrest, meaning thereby his first and second confessions, should have been excluded from the evidence as a matter of law regardless of

their voluntary character. We disagree for the reason stated in that part of this opinion (on p. 158) concerning the admissibility of extrajudicial confessions.

Secondly, relying on *Fahy v. Connecticut, supra,* the appellant contends, contrary to the finding of the trial court, that he was induced to confess as a result of having been confronted with the wooden part of the shotgun and a black scarf. We find nothing in the record to so indicate and he did not specifically so testify. All that the record discloses is that the appellant readily recognized the wooden part of the shotgun and that he cooperated with the police, but there is nothing to indicate whether he was actually induced to confess by the confrontation. Griffin did testify, however, that he signed the confessions because he was told he had been implicated by statements of his codefendants and that if he confessed he would be given concurrent sentences. This was denied by the police officers and the denial was obviously believed by the trial court. We think the confessions were voluntary. See p. 158 of this opinion.

Finally, the fact that this appellant may have been denied the right to telephone a relative, absent a showing that the confessions were not freely and voluntarily given, would not render them inadmissible. *Jones v. State,* 229 Md. 165, 182 A. 2d 784 (1962).

### The Cases Against Bethea

It is the contention of this appellant that his arrest was illegal for want of probable cause and that the subsequently made confessions were therefore inadmissible in evidence.

The claim is that the anonymous telephone call to the police that this appellant was the man who got away after the abortive attempt to rob Howard's Liquor Store a second time and the giving of his whereabouts was insufficient probable cause to warrant his arrest. But this overlooks the fact that when the police, who had previously received a general description of the other masked participant and the clothing he was wearing, went to the address given and knocked on the front door, a man with a black scarf on top of his head and otherwise fitting the description of the person they were looking for came to the door. That man turned out to be Bethea. He accompanied his arrestors to the police station and subsequently admitted his par-

ticipation in the robberies. The trial court found that under all the circumstances the police had probable cause to believe that Bethea had been involved in the attempted robbery and that his arrest was therefore legal. We agree. See *Young v. State, supra.*

In holding the arrest to be lawful we are not unmindful of the recent decision of the Supreme Court in *Beck v. Ohio,* 379 U. S. 89 (1964), holding that information received from an informer was not in that case sufficient probable cause for arrest. That case, however, is clearly distinguishable from this. There, the police officer had not testified with specificity as to what the informer had actually said and why he thought the information was credible. Here, the police officer, in addition to fully disclosing what the anonymous caller had said, further testified that on such information and his own subsequent observations he made the arrest.

Having held the arrest to have been lawful, the only remaining question is whether or not the confessions were voluntarily made, and as to this, there was no claim that they were not. See p. 158 of this opinion.

### The Cases Against Shelly

In addition to claiming that his confession should not have been admitted in evidence because the arrest was illegal and because he was confronted with illegally seized evidence, this appellant contends that his confession was obtained as the result of a promise and that the totality of the circumstances rendered the confession inadmissible.

The information received from Griffin and Bethea constituted reasonable probable cause for the police to believe that Shelly had participated in some of the robberies. See *Mefford and Blackburn v. State, supra; State v. Jackson, supra.* In any event, even if the arrest were illegal, this, as was stated in the cases against Griffin and Bethea, would not in itself preclude the admission in evidence of the subsequent confession, the making of which, under the facts and circumstances, appears to have been a voluntary act. On the one hand, there was the testimony of the police officers that no promises or inducements were made in order to obtain the confession. On the other hand,

Shelly testified that he got the impression that he would be allowed to return to the army if he confessed and claims that the police promised to see that he was given that privilege. While the record shows that Shelly and the police officers discussed his army career, there is nothing to show that an actual promise was made and that he confessed in reliance thereon. Nor is there anything in the totality of the circumstances to render the confession inadmissible. On the evidence produced, we cannot say that the trial court erred in finding that the confession was voluntary and therefore admissible. *Abbott v. State, supra.*

For the reasons stated, the judgments of conviction in the cases against Jones, Griffin, Bethea and Shelly will be affirmed.

*Judgments against McChan reversed and cases remanded for new trials; the Mayor and City Council of Baltimore to pay the costs.*

*Judgments against Jones, Griffin, Bethea and Shelly affirmed.*