TYRONE O'NEAL JASON, WILBUR ALLEN JOHNSON, AND WILLIAM FRANCIS MOORE *v.* STATE OF MARYLAND

[No. 346, September Term, 1969.]

*Decided March 9, 1970.*

The cause was submitted to MURPHY, C.J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*James W. McAllister* for appellants Jason and Moore, and *Donald Daneman* for appellant Johnson.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Luther C. West, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Tyrone O'Neal Jason, Wilbur Allen Johnson and William Francis Moore (appellants) first ask on this appeal: "Did not the trial court err by holding trial under a faulty indictment?" The indictment to which they refer was No. 5332, charging trespass. It was jointly tried with other indictments against them. We dispose of this question by noting that it is pointless, the argument in support of the contention presented by it is meaningless, and the relief sought in connection with it—a reversal or, in the alternative, a "remand to secure a proper indictment for retrial" — is incongruous. The question is pointless because appellants were acquitted of the offense charged in the challenged indictment by the grant of a motion for judgment of acquittal made at the trial at the close of the evidence offered by the State. The argument is meaningless because, in the light of the acquittal, whether or

not the indictment was properly amended prior to trial is not relevant or material; assuming that the amendment was a matter of substance and not form, appellants were in nowise prejudiced. The relief sought is incongruous because there is no conviction under the indictment to reverse and because even if a new indictment were returned by the grand jury, prosecution under it would be precluded as placing appellants twice in jeopardy, appellants having been found not guilty of the offense. The contention posed by the question is devoid of merit.

Each of appellants, jointly tried, were found guilty at a court trial in the Criminal Court of Baltimore of possession (1st count) and control of heroin (2nd count) and possession of narcotic paraphernalia (3rd count) on 22 August 1968. Jason was so charged under indictment 5331, Johnson under indictment 5333 and Moore under indictment 5334. Johnson was also found guilty as a second offender under an addendum to indictment 5333 and Moore as a third offender under an addendum to indictment 5334, the trial under each addendum being held concurrently with that of the substantive offense. Jason was sentenced to 4 years on the conviction under each count; Johnson was sentenced to 10 years on the conviction under each count; Moore was sentenced to 20 years on the conviction under each count. The sentences as to each were imposed to run concurrently.

## FACTS

Evidence adduced at the trial showed that the premises 1106 Shields Place in Baltimore City, a one family home, four rooms and a bath, were owned by Samuel London, who maintained the property for rent. At the time the offenses here were alleged to have been committed the premises were not rented to anyone and were not lawfully occupied by anyone. The house was "locked, both front and rear." Specifically, none of appellants or their codefendants, Sharyn Doshane Cox and Irene Bertha

Page,[1] had made application to rent the premises and none had permission to enter or occupy the premises. On 19 August 1968 Detective Daniel Davis, Criminal Investigation Division, Narcotics Unit, Baltimore City Police Department, received permission from London for the police to enter the premises. London testified, "He asked permission could he go into the premises and check it, and I told him absolutely he could." Davis, who it was stipulated by appellants was an expert "in the field of narcotics", testified that on 22 August, in the company of other officers and an agent of the Federal Bureau of Narcotics, he went to 1106 Shields Place about 2:00 P.M. Officers were stationed in the front and the rear of the house. The front door was secured by a padlock but the rear door was ajar. Davis pushed open the rear door and saw Moore. "He was standing by the sink [in the kitchen] giving himself an injection of narcotics" in the arm by means of "an eye dropper with a needle attached." He was placed under arrest and the narcotic paraphernalia seized from him. Irene Page was in the front room seated in an armchair blocking the front door. Some of the officers went to the second floor. As they got to the top of the steps Jason ran past them towards the front room and attempted to get out of the window. He was arrested. Sharyn Cox and Johnson were in the rear room on the second floor. Cox was on the bed and as Davis entered the room he saw Johnson throw an object from the window. Davis went to the window and observed the Federal Narcotics Agent in the yard picking up two brown envelopes "which had spilled and which contained gelatin capsules of the type I recognized to be a suspected narcotic at that time." Johnson and Cox were arrested. "All over the bed" were a number of white gelatin capsules. A plastic bag containing an eye dropper, two plastic syringes, two hypodermic needles, four needle hold-

---

1. Page and Cox were jointly charged with Jason under indictment 5331. Each of them was convicted under each of the three counts in the indictment, sentenced to 2 years and fined $500. The sentence of each was suspended and each was placed on probation.

ers, a plastic container in which was a piece of wire used to clean hypodermic needles, was found on the staircase leading to the second floor. Also on those steps were found two hypodermic needles, an eye dropper and a burned bottle cap "which contained a residue of suspected narcotics." Davis explained that "a burned bottle cap is usually a cap from a beverage used by addicts to cook narcotics * * * for the purpose of injection" and that hypodermic needles and syringes were used by addicts "for the purpose of injection of a narcotic." Seventeen gelatin capsules containing a white powder and three and a half capsules containing a white residue were recovered from the bed and the floor in the room in which Johnson and Cox were found. Three brown envelopes were recovered by the Federal Narcotics Agent from the yard under the window from which Davis had seen Johnson throw something. In them were 211 gelatin capsules containing a white powder. The Agent also recovered a burned bottle cap. Appellants and the two persons with them had "fresh needle marks * * * on their arms. * * * Miss Page was observed to have blood running from her leg." She also "had needle marks on her right arm. Mr. Moore had numerous needle marks on both arms. Mr. Johnson had needle marks and tracks on both arms and legs. Mr. Jason had numerous needle marks on both arms. * * * Miss Cox had numerous needle marks and tracks on the right and left arms." The evidence was admitted over objection. The report of the chemist analyzing the evidence was admitted. It showed that the syringe and needle seized from Moore contained no prohibited narcotic. Of the twenty and one-half capsules recovered from the bed and floor in the room in which Johnson and Cox were found, only one capsule contained heroin hydrochloride. What the remaining capsules contained was not disclosed. Two hundred and five of the capsules recovered in the yard contained heroin hydrochloride. Six of the capsules and the bottle cap recovered in the yard did not contain a narcotic drug. None of the articles found on the steps contained a narcotic

drug. Appellants and the two women were the only persons in the premises. On cross-examination of Davis on the fact that no trace of a narcotic was found in the syringe seized from Moore, he said, "Sometime you don't get enough to analyze, depending how many times he jerked off with the needle." No narcotic drug was found on the person of any of appellants or the two women. The defendants offered no evidence.

## THE SEIZURE OF THE EVIDENCE

We first note that *Chimel v. State of California*, 395 U. S. 752 is not here applicable as the evidence admitted was obtained by a search and seizure conducted prior to 23 June 1969. *Scott v. State*, 7 Md. App. 505, 518. The rule applicable here was stated in *Brown v. State*, 3 Md. App. 90, 93:

> "If the seizure of the evidence objected to was not unreasonable, it was properly admitted. The seizure of the evidence would not be unreasonable, even though without a search warrant, if the arrest of the appellant was lawful, for then the seizure would be an incident to a lawful arrest. *David v. State*, 1 Md. App. 666. The arrest of the appellant would be lawful even though without a warrant of arrest, if the arresting officer had probable cause to believe that a felony had been committed and that the appellant had committed the felony, *Boone v. State*, 2 Md. App. 479, or if the appellant committed a misdemeanor in the presence of the arresting officer, *Scott v. State*, 1 Md. App. 481. But the facts and circumstances showing probable cause must come lawfully within the knowledge of the officer, *Johnson v. State*, 2 Md. App. 300, and the commission of the misdemeanor in the officer's presence must be lawfully observed by him. *Dailey v. State*, 234 Md. 325; otherwise the arrest will not support the introduction of the evidence."

And in *Scott v. State, supra,* at 510, we said that prior to *Chimel* the right to search and seize without a warrant as incident to a lawful arrest extends to things under the accused's immediate control and to an extent depending upon the circumstances of the case, to the place where he is arrested; the extent of the search is not necessarily confined to the room in which the arrest was made.

Appellants claim that their arrests were illegal. We find that they were legal. We think it clear that the police were lawfully on the premises, as the trial court found, having received permission to enter from the legal owner and appellants having no lawful right to occupy or be on the premises, as guests, invitees or otherwise. They were trespassers.[2] There being no question of an unlawful intrusion by the police into an area constitutionally protected as far as appellants were concerned, the observations of the officers when on the premises were lawfully come by. Compare *Brown v. State, supra.*

Moore was observed in the process of giving himself an injection in the arm by means of an eye dropper with a needle attached. This was sufficient for the observing officer, experienced in the investigation of illicit narcotic use and traffic, to have probable cause to believe that Moore was committing the felonies of unlawful possession and control of a narcotic drug or was committing in his presence the misdemeanor of unlawful possession of narcotic paraphernalia. Thus the arrest of Moore by a member of the police team was legal and the seizure of the paraphernalia from his person was reasonable as incident to the arrest.

Johnson was observed in a room in which were a number of gelatin capsules in plain view and was seen to throw envelopes out the window when the officers entered

---

2. In granting the motion for judgment of acquittal to the indictment charging trespass the court made clear that it was only because there was no evidence that appellants had been notified not to trespass. See Code, Art. 27, § 577. That the court found that they could not be convicted of the crime of trespass proscribed by statute did not mean that they were not trespassing on the property or that they had any right to be on the premises.

the room. Looking into the yard under the window, the officer observed gelatin capsules spill out of the envelopes. This was probable cause for him to believe that Johnson was committing the felonies of unlawful possession and control of a narcotic drug. Thus the arrest of Johnson was legal and the seizure of the evidence found in the room and in the yard was in the circumstances reasonable as incident to the arrest.

Having already observed Moore giving himself an injection with narcotic paraphernalia and Miss Page seated in an armchair blocking the front door, Jason was observed attempting to escape out the front window. These facts and circumstances constituted sufficient probable cause for the officers to believe that Jason was a participant in the commission of the felonies of unlawful possession and control of narcotic drugs and thus his arrest was legal.

And on all the attendant facts and circumstances, the total atmosphere of the case, the search of the entire premises consisting of only four rooms and a bath, and the seizure of evidence found therein was reasonable as incident to the legal arrests. See *United States v. Rabinowitz*, 339 U. S. 56, 66. That some of the evidence so obtained was later proved not to contain traces of a narcotic drug was not material to the existence *vel non* of probable cause.

We hold that the evidence was properly admissible. Our ruling does not by any means constitute "a frontal attack" on our decisions in *Scott v. State*, 4 Md. App. 482, *Brown v. State, supra,* and *Dorsey and Gladden v. State,* 2 Md. App. 40, as appellants suggest. Those cases are simply not factually apposite.

## THE SUFFICIENCY OF THE EVIDENCE

In rendering its verdicts, the lower court made factual findings. It found that all of the appellants were in control of the premises, although they were trespassers. It found, in the totality of the circumstances, that all of the defendants, the appellants and the two women, were

jointly engaged in the unlawful enterprise and in possession and control, actual or constructive, of the narcotics and narcotic paraphernalia [3] found on the steps in the house, in the bedroom, and in the yard, having been thrown out the window by Johnson. The totality of the circumstances considered by the court included that only the five defendants were in the premises, that all of them had fresh and old needle marks upon their bodies, that Page had blood running down her leg from one such mark, that Jason attempted to flee, that Johnson threw contraband out the window, that the contraband was distributed throughout the relatively small premises, and that some of the capsules contained heroin. We cannot say that the judgment of the court on the evidence before it was clearly erroneous. Maryland Rule 1086. We find that the evidence was sufficient in law to sustain the convictions as to each appellant of possession of heroin, control of heroin and possession of narcotic paraphernalia as charged.[4] See *Williams v. State,* 5 Md. App. 450. We note that it is not required that there be sole possession and sole control; there may be joint possession and joint control in several persons. And the duration of the possession and the quantity possessed are not material, nor is it necessary to prove ownership in the sense of the title. See *Munger v. State,* 7 Md. App. 710; *Davis and Napier v. State,* 7 Md. App. 667; *Scott v. State, supra; Hernandez v. State,* 7 Md. App. 355; *Haley, et al. v. State,* 7 Md. App. 18; *Williams v. State,* 7 Md. App. 5.

## MERGER—DUPLICITY

Appellants claim the court erred "by not merging the counts in the indictments." It is not clear from the argu-

3. It is inherent in the findings of the court that it also found that the hypodermics, syringes, needles and bottle caps were narcotic paraphernalia within the meaning of Code, Art. 27, § 297.

4. Of course, the evidence that narcotic paraphernalia was found in the actual possession of Moore was sufficient to convict him of the charge under the 3rd count of indictment 5334 and the evidence as to the narcotics in the bedroom with Johnson and his throwing capsules containing heroin out of the window was sufficient to convict him under the 1st and 2nd counts of indictment 5333 in any event.

ment in the brief what offenses they feel merged into what conviction, but it seems that they think that they should have been convicted, at the most, under only one count. Each of the three offenses charged is a separate and distinct crime. In proving any one of them, the elements essential to the proof of either of the other two are not necessarily established. See *Chittum v. State,* 1 Md. App. 205. The modern doctrine of merger is not applicable.

However, although merger of offenses is not involved, inquiry as to the propriety of the convictions does not end there. Whether conviction of more than one of the offenses would be precluded on the ground of duplicity should be considered. It is obvious that a conviction of possession of narcotic paraphernalia and a conviction of either possession or control of a narcotic drug are not duplicitous. The former involves narcotic paraphernalia; each of the latter involve a narcotic drug. The question is whether convictions both of possession by an accused of a narcotic drug and of having the same narcotic drug under that accused's control should be precluded as duplicitous.

Section 277 provides, in relevant part:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this subtitle."

In *Williams and Williams v. State,* 7 Md. App. 5, 14, we adopted the meaning of "possession", as within the intent of the statute, as "the act or condition of having in or taking into one's control or holding at one's disposal." We have said that possession need not be immediate and direct; there may be constructive possession, *Broadway v. State,* 3 Md. App. 164, 166. And as pointed out, *supra,* there may be joint possession in several persons, *Rucker v. State,* 196 Md. 334, 340. In *Bryant v. State,* 229 Md. 531, 537, the Court of Appeals accepted the definition of

"control" as "to exercise restraining or directing influence over", noting that it has also been defined to relate to authority over what is not in one's physical possession. In *Bryant,* at 537, it held flatly that § 277 "makes the possession of narcotics and the control of narcotics two separate offenses." Thus it is established that § 277 does not create as to possession and control of narcotics, one crime the requisite elements of which are possession *and* control but two crimes, as to one of which possession is the only element and as to the other of which control is the only element. See *Torres v. Warden,* 227 Md. 649. We think it patent that, within the definitions of the words, a person may be in control of a narcotic without being in physical possession of it. But if a person is in physical possession of a narcotic he also has it under his control. And this is so even if another may also exercise restraining or directing influence over the narcotic, for by taking it into physical possession, the possessor, by the definition of possession, takes it into his control. In such case, as to the actual possessor and another who may exercise restraining or directing influence over the narcotic, each has it under his control, although the latter does not have it in his physical possession. Thus we noted in *Haley, et al. v. State, supra,* note 6, p. 33, "We think it clear that if a person has physical possession of a narcotic, it is also under his control." We felt that when a person is convicted of possession of a narcotic upon evidence that he had actual possession, a conviction of having the same drug in his control would be duplicitous. And we held in *Agee v. State,* 8 Md. App. 148, 152 that a conviction of possession based upon physical possession would preclude a conviction also for control based on the same possession.

However, as we have said, there may be constructive possession as distinguished from physical possession. Constructive possession has not been expressly defined in prior decisions in this jurisdiction.[5] In *Bryant v. State,*

---

5. Webster's Third New International Dictionary defines "constructive" as often used in law to be "an act or condition assumed from other acts or conditions which are considered by inference

*supra*, possession was not specifically defined but the Court said, at 537, it must be given its ordinary meaning, which we gave it, as above set out, in *Williams and Williams v. State, supra*. In *Henson v. State*, 236 Md. 518, 525, the Court said, "Possession and control need not be immediate and direct but may be constructive." It stated, "That the narcotics were not on [accused's] person but in the house of which he was a resident did not prevent the inference the police and trial court drew—that he had possession and control of narcotics—from being properly drawn." At 524-525. In *Armwood v. State*, 229 Md. 565, where narcotics were found in the accused's apartment which he admitted was his residence and where there was no showing that anyone else had an interest in the premises, the Court said that his admission of receiving narcotics from a drug peddler and his pointing to the purse containing the incriminating evidence, after the officers were in the room, were sufficient to indicate that he had at least constructive possession of the narcotics seized. At 570. In *Broadway v. State, supra,* applying the rule that possession and control may be constructive, we found the evidence to be sufficient in law to sustain a conviction of possession and control of narcotics where the narcotics were found in a room about a foot from where the defendant was seated and in a coat hanging in a closet in the room. There were fresh needle marks on defendant's arms, and defendant told the police that he had used drugs while on the premises. We found that the fact that the defendant was a visitor to the premises, and not one of the occupants, did not, in the circumstances, compel a holding to the contrary. In *Munger v. State, supra,* the defendant took the police into an apartment rented by him. Narcotic paraphernalia was seen by the officers on a table in one of the rooms. Two other persons were in the room, one found hiding under a bed. Noting that possession may be constructive, that possession may be joint and that it is not necessary to prove ownership in the sense of title, we found the evidence sufficient in law

or by public policy as amounting to or involving the act or condition assumed."

to sustain the conviction of possession of narcotic paraphernalia. Cf. *Haley, et al. v. State, supra; Wimberly v. State,* 7 Md. App. 302.

We conclude from the prior opinions that constructive possession exists when an article is taken into a person's control or he holds it at his disposal but is not on his person so as to be immediate or direct or physical possession. Of course, whether it is taken into his control or he holds it at his disposal depends on the particular facts and circumstances of each case. We note that the other statutes making the mere possession of a proscribed article a crime do not make it a separate and distinct crime to have the article under his control. For example, by Code, Art. 27, § 297 the crime is to have or possess narcotic paraphernalia, and by § 362 the crime is to have in possession a lottery slip. Neither statute creates a separate crime of having the proscribed article under a person's control. We further note that to be a receiver of stolen goods manual or actual physical possession of the goods is not required; constructive possession—"a measure of control or dominion over its custody"—is sufficient. *Polansky v. State,* 205 Md. 362, 367; *Jordan v. State,* 219 Md. 36, 44; *Rhodes v. State,* 219 Md. 279, 281. *Polansky, Jordan* and *Rhodes* were referred to by the Court in *Henson v. State, supra,* with reference to its statement that possession and control of a narcotic may be constructive. 236 Md. at 525. And in regard to the inference that the possessor of recently stolen goods is the thief, possession may be constructive and exclusive in more than one person. It is not necessary for the inference to arise that there be a physical or actual manual possession as long as the accused had a measure of control or dominion over the goods. *Lawrence and Boyd v. State,* 6 Md. App. 226; *Burkett v. State,* 5 Md. App. 211; *Wilkins v. State,* 4 Md. App. 334.

We can place no interpretation on "constructive possession" as sufficient to constitute "possession" within the meaning of Code, Art. 27, § 277 as to narcotic drugs, than the interpretation of "constructive possession" as

sufficient to constitute "possession" within the meaning of the other statutes making possession of proscribed articles a crime or as sufficient to constitute the "receiving" of stolen goods or as sufficient to constitute "possession" within the meaning of the inference arising from possession of recently stolen goods. We believe that evidence establishing that a person is in constructive possession of narcotics is also sufficient to establish that those narcotics are under his control. Thus a conviction of possession of a narcotic drug based upon constructive possession and a conviction of having that narcotic drug under that person's control, based on the same constructive possession would be duplicitous. In such case the conviction of control would be precluded.

In the instant case the evidence, as to the appellants, showed that only Johnson was in physical possession of a narcotic drug, that which he was seen to throw out the window. If his conviction of possession was based on possession of that drug, his conviction of control of it, which in the circumstances, would have to be based on the physical possession of it, would be duplicitous; a conviction of control of it would be precluded. If his conviction of possession of a narcotic drug was based on possession of the drug in the capsule found in the bedroom, his conviction of control of it, which, in the circumstances, would have to be based on constructive possession of it, would be duplicitous; a conviction of control of it would be precluded. And his convictions of possession and control of a narcotic drug would have to be based either on the drug he threw out the window or on the drug found in the bedroom, or both, as they were the only narcotic drugs found.

With regard to Jason and Moore, the conviction of possession of a narcotic drug as to each of them would have to be based on the possession either of the drug Johnson threw out the window or the drug in the capsule found in the bedroom, or both, since, as we pointed out, these were the only drugs recovered. The possession of each of them was constructive. The conviction of each

of them of control of a narcotic drug, would, in the circumstances, have to be based on his constructive possession of the same drugs and would be duplicitous; the conviction of each of control would be precluded.

We observe that we feel that the evidence would not support a finding as to any of appellants, that he possessed the drug thrown out the window but that it was not under his control or that he possessed the drug found in the bedroom but that it was not under his control. Thus the duplicity of the convictions of possession and control could not be overcome on the theory that any appellant was in possession only of the drug thrown out the window and in control only of the drug found in the bedroom, or *vice versa*.

Neither Moore nor Johnson questions his conviction under the addendum. In any event the prior conviction of Johnson and the prior two convictions of Moore were clearly proved.

> *As to Jason, indictment 5331: judgments under the first and third counts affirmed; judgment under the second count reversed, the conviction being duplicitous with that under the first count.*
>
> *As to Johnson, indictment 5333: judgments under the first and third counts affirmed; conviction under the addendum affirmed; judgment under the second count reversed, the conviction being duplicitous with that under the first count.*
>
> *As to Moore, indictment 5334: judgments under the first and third counts affirmed; conviction under the addendum affirmed; judgment under the second count reversed, the conviction being duplicitous with that under the first count.*