132 So.2d 312 (1961)
Henry Grady DANIEL, Appellant,
v.
STATE of Florida, Appellee.
No. 1763.
District Court of Appeal of Florida. Second District.
August 16, 1961.
Pat Whitaker, of Whitaker Brothers, Tampa, and J. Hardin Peterson, Sr., Lakeland, for appellant.
Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., for appellee.
KANNER, Judge.
A jury found defendant guilty under two counts of aggravated assault, and in appealing from the conviction and subsequent sentences, defendant poses several questions for consideration by this court. We must reverse the trial judge because of his refusal to give a specific requested charge to the jury, designated as charge number 14 and protested under defendant's appeal point three. We shall therefore not deal with the other questions here presented, and we shall review the evidence only as it relates to our consideration of this particular phase of the case in order to avoid anticipatory considerations of what may later transpire in another trial.
The requested charge 14 reads as follows:
"The Court instructs you, gentlemen of the jury, that under the law a person may lawfully repel an attack upon him, although made by an officer who tries to arrest him, if he does not know that the person trying to make the arrest is an officer; and this is true regardless of whether or not the party attacked has committed some offense which subjects him to arrest."
There was no testimony for the defendant. Testimony for the state consisted in the main of that given by a police detective of the City of Winter Haven and a wild life officer employed by the State of Florida, *313 the persons against whom the defendant was alleged to have perpetrated the aggravated assault.
Testimony of the police detective yielded, in essence, the following narrative. Complaints had been received about defendant, and the police detective had been looking for him. On the night in question, defendant drove his green Plymouth station wagon to the middle of a block on 5th Street in Winter Haven, picked up a man, and proceeded to Funnyting Road, a clay street located within the residential area of Winter Haven, followed by the officers. Defendant drove north along that road into an orange grove, where he turned his vehicle into a clearing about 25 feet from the road. Not seeing defendant's car when it stopped, the lights having been extinguished as the vehicle entered Funnyting Road, the police detective parked the car he was driving on the side of the road and, with the wild life officer, went on foot to a point where he noticed a car parked in the clearing with lights and motor off. Hearing noises coming from within the car, he, together with the wild life officer, walked up in front of the vehicle and directed the beam of a flashlight against the windshield. Defendant and his passenger "raised up"; and the police detective recognized defendant, who immediately turned on the ignition and headlights of his car. The detective was in civilian attire, but the wild life officer wore his official uniform with pistol. The police detective called out, "Halt, police." Defendant then put his car in reverse gear and backed up a short distance, with the police detective following and calling, "Halt, police." Defendant stopped and shifted gears for forward movement, while the police detective at that moment fired a warning shot into the air. Defendant, after backing his car at the clearing in the grove, could have departed the grove by a shorter clay road across which he traveled in reverse. Instead, he drove his vehicle forward "as fast as he could go in the dirt" directly toward the two officers standing in the area, making no attempt to avoid hitting them. They were forced to jump aside in order to avoid the oncoming vehicle. Defendant did not stop his car, despite the officer's calls and despite the first shot. As defendant's car passed, the police detective fired a second and third shot in rapid succession, hitting the bumper and left taillight. Defendant then turned off his headlights, made the necessary turn onto Funnyting Road, and proceeded out of the grove, with the two officers pursuing on foot. The vehicle of defendant collided with the car which the officer had parked on the side of the road, and when the two officers arrived at the car, the passenger of defendant, who remains anonymous, had fled. The police detective then identified himself to defendant.
The wild life officer, testifying essentially to the same effect with respect to the events which occurred in the grove clearing prior to defendant's flight from that area, stated that he and the police detective arrived at the scene at about 9:30 or 9:45 p.m. He corroborated the police detective's statement that he several times had called, "Halt, police," to defendant, stating additionally that he, the wild life officer, had also called out those words and that he himself had fired two shots at defendant's vehicle as it passed the two men, striking the left rear fender with one of the shots in an attempt to hit the left rear tire. He also testified that defendant was driving his car directly at them and that he could have turned out on the clay road. He stated that defendant, as he left the grove, was "fishtailing" or going from side to side, that he hit the police detective's parked vehicle, and that, when he and the police detective arrived, defendant's companion jumped from the car and ran through the grove. The wild life officer then added:
"That's when I asked Mr. Daniels why he was trying to run over us. He so stated he thought we were burglars."
Defendant contends that the question of whether or not he knew his interceptors to *314 be officers of the law was a question of fact for the jury and that the requested instruction therefore should have been given. He insists that the testimony shows he did not know the two men to be officers. Defendant makes particular reference to testimony with respect to the sudden appearance of the two men shining a light into the car, the noise attendant to the starting and racing of the motor which he states could have made indistinguishable the words which the two men were calling out, the nighttime approach of his interceptors, the firing of shots, together with testimony of the state's witness, the wild life officer, "* * * he thought we were burglars," and the police detective's testimony that he identified himself to defendant after he was apprehended.
The state's position, on the other hand, is that the evidence shows the defendant to have been given knowledge of the identity of the officers. In support of this, the state emphasizes those portions of the testimony concerning the repeated calls of "Halt, police" and the fact that the police detective had seen defendant on several occasions in the city park when he was on duty there in uniform, which it is urged would indicate that defendant knew him. The testimony that on the evening in question the wild life officer was in full uniform and the two men were in clear sight of defendant when he turned on the headlights of his automobile is also cited by the state.
Although it is essential that law enforcement officers be protected from violence by the lawless, nevertheless in order to avail themselves of the protection which the law affords them they must make known their official capacity before exercising the prerogative of arrest with the attendant assault. Upon thus making themselves known, they then come within the protection of the law, and a citizen is thereupon bound to submit, at least to the point of ascertaining the character of the charge and the extent of the officer's authority. Presley v. State, 1918, 75 Fla. 434, 78 So. 532, L.R.A. 1918D, 975.
The testimony given by the state witness, saying in response to a question that "* * * he thought we were burglars," was testimony by which the state was bound. This, together with the attendant circumstances, was sufficient to create an issue as to whether or not defendant had knowledge of the official capacity of his interceptors. The requested charge was in writing and timely made and was not encompassed by those given by the court. It follows the wording of the principle of law set out in the decision of Presley v. State, 1918, 75 Fla. 434, 438, 78 So. 532, 534, L.R.A. 1918D, 975. Moreover, the prepared charge was adequate in form and substance.
The judgments of conviction with sentences are accordingly reversed, and the cause is remanded for new trial.
Reversed.
SHANNON, C.J., and SPOTO, I.C., Associate Judge, concur.