## SHELDON SHIPLEY OWINGS *v.* STATE
## OF MARYLAND

[No. 209, September Term, 1969.]

*Decided January 28, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Morris Lee Kaplan* for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred Kelly Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted at a court trial of having possession and control of marihuana and was sentenced to four years under the jurisdiction of the Department of Correction. On this appeal he contends that as he was illegally arrested, the search of the automobile he was then driving was likewise illegal; and that the admission into evidence of the marihuana seized as a result of that search constituted reversible error.

At the trial Sergeant Steven Tabeling of the Baltimore City Police Department testified that at approximately 6:00 p.m. on December 28, 1968, he received a phone call from an informant, a former drug addict, who had furnished him "information which had led to the arrest and conviction on one subject for the possession of marihuana and burglary, on two others for possession of heroin and on two others for possession of marihuana;" that the informant "had also supplied [him] information that

had led to the recoveries of various amounts of drugs;" and that two of the people concerning whom the informant had furnished information "were convicted in this court last week." He further testified that his informant told him "that a man by the name of Sheldon Owings, who was a white male, had reddish color hair, had a red beard would come to 11 Elmwood Road at about 7:00 p.m. on the night of the 28th;" that "[i]n his possession he would have two kilos of marihuana;" that "[h]e would also have approximately one hundred pills of mescaline" (a hallucinogenic drug) ; that "Owings would be driving a Volkswagen which was light in color and had the appearance of a Volkswagen bus;" and that "it would have foreign tags on it." Tabeling testified that the address in question was about a mile and one half from where he received the call from his informer; that he didn't think he had time to secure a search warrant for the vehicle; that he then went to the location to await the arrival of Owings; and that at about 7:30 p.m. a man later identified as the appellant Owings and having a "reddish color" beard arrived "driving a gray Volkswagen bus type with a foreign tag on it." Sergeant Tabeling approached the vehicle as it was entering the driveway at 11 Elmwood Drive, where "I identified myself to Mr. Owings and told him that I was going to make a search of his vehicle for narcotics." The vehicle was then searched. Two bricks of marihuana were found in the rear of the vehicle, together with a package of marihuana seeds and a quantity of non-narcotic pills. Appellant was then arrested.

It is well settled that an automobile, unlike a dwelling or person, may be searched without a warrant where there is probable cause in the constitutional sense to believe that the vehicle contains that which is subject to seizure, whether it be contraband, the fruits or instrumentalities of a crime, or other evidence thereto pertaining; and the right so to search an automobile, or other movable vehicle, does not depend on whether the searching officer first had probable cause to arrest the driver or

other occupant. *Dyke v. Taylor Implement Mfg. Co.,* 391 U. S. 216; *Johnson v. State,* 8 Md. App. 28; *Cornish v. State,* 6 Md. App. 167; *Sweeting v. State,* 5 Md. App. 623. The rule is justified on the basis that an automobile is so readily movable as to make impracticable the obtaining of a search warrant; and the rule applies to parked vehicles even where no immediate danger exists that the articles to be seized from the vehicle will be removed. *Sweeting v. State, supra,* at page 628.

We held in *Johnson v. State, supra,* at page 33, that probable cause to conduct a warrantless search of an automobile exists in the constitutional sense when the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, were such as would warrant a man of reasonable caution in believing that the vehicle contained that which was lawfully subject to seizure. While a mere suspicion will never suffice to establish probable cause, neither is certainty a requirement. An officer is therefore not required to have actual knowledge that the vehicle harbors the items to be seized at the time he undertakes his warrantless search. As stated by the Supreme Court in *Spinelli v. United States,* 393 U. S. 410, "only the probability, and not a *prima facie* showing of criminal activity is the standard of probable cause." Where, as here, the legality of the search of appellant's motor vehicle depends upon the existence of probable cause—and the information upon which the arresting officer acted in initiating the search was received from an undisclosed informant—the rule, more concretely stated, is that probable cause is shown where the informer's information, together with the officer's personal knowledge, are such as show, with specificity, what the informer actually said and why the officer thought the information was credible; and it is further shown that such information was sufficiently reliable and reasonably trustworthy to give the officer, as a prudent man, probable cause to believe that the vehicle contained the fruits or instrumentalities of a crime or other evidence pertaining thereto. *Cornish*

*v. State, supra,* and cases cited at page 176. The rule, stated in somewhat different terms, but meaning essentially the same thing, is that where the search of the motor vehicle is initiated on hearsay information received from an informer, the State, to establish its legality where challenged, must sufficiently inform the trial judge of some of the underlying circumstances from which the informant concluded that the vehicle harbored fruits, instrumentalities, or evidence of a crime, and some of the underlying circumstances from which the police concluded that the informant was credible or his information reliable. See *Mullaney v. State,* 5 Md. App. 248, and cases cited at page 254.

Appellant contends that under *Spinelli v. United States, supra,* probable cause cannot be established unless the basis for the informer's conclusion that the accused was committing a crime is shown with particularity. He contends in the instant case that there was absolutely no showing of any "underlying circumstances" from which the informer concluded that the appellant was carrying narcotics in his vehicle. *Spinelli* is undoubtedly the Supreme Court's most recent and definitive case involving the use of information obtained from an informer as a basis for probable cause.[1] While the court there found that a search warrant was not supported by probable cause because, among other reasons, the basis for the informer's tip that the accused was committing a crime was not shown, it reverently reaffirmed its earlier landmark decision in *Draper v. United States,* 358 U. S. 307. In *Draper,* a federal narcotics agent of considerable experience was told by a paid informer that defendant Draper was engaged in narcotics traffic, and that Draper had

---

1. In *Spinelli,* the Supreme Court said:
   "While *Draper* involved the question whether the police had probable cause for an arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue."
   We think it similarly apparent that the principles enunciated in both *Spinelli* and *Draper* control the question whether probable cause has been shown for a vehicle search.

gone to Chicago on the train and was going to bring back three ounces of heroin on one of two specified dates. The informer also gave the agent a detailed physical description of Draper and of the clothing that he would be wearing, saying that he would be carrying a tan zipper bag and that he habitually walked fast. The informant had given the agent reliable information on several previous occasions regarding narcotic violations. On the second of the specified days, the agent observed the person having the exact physical description and wearing the precise clothing described by the informer "alight from the incoming Chicago train and start walking 'fast' toward the exit. He was carrying a tan zipper bag in his right hand and his left was thrust in his raincoat pocket." The agent stopped Draper, arrested him, then searched him and found two envelopes containing heroin clutched in his left hand in his raincoat pocket and found a syringe in the tan zipper bag. On the basis of what the informer had told the agent and on the agent's corroboration of this information, the court said:

> "* * * [the agent] had personally verified every facet of the information given him by [the informer] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of [the informer's] information being thus personally verified, [the agent] had 'reasonable grounds' to believe that the remaining unverified bit of [the informer's] information—that Draper would have the heroin with him—was likewise true." 358 U. S. at 313.

The case before us closely parallels *Draper*, except that here a naked vehicle search is involved rather than a search incident to an arrest. As in *Draper*, an obviously reliable informant told Sergeant Tabeling that appellant was going to arrive at a specified place at a specified time by means of a specified mode of transportation and would

have in his possession prohibited narcotics of a specified type. As in *Draper,* the appellant's physical appearance was described with particularity such that there could be no mistaking his identification. And, lastly, as in *Draper,* Sergeant Tabeling, prior to his search of appellant's vehicle, personally observed everything that the informant had told him other than that the vehicle contained narcotics. Thus, as in *Draper,* there was probable cause to search appellant's vehicle for narcotics on these facts.

*Spinelli* and *Draper* would thus seem to involve two different, but constitutionally adequate, tests to determine the sufficiency of an informer's information sought to be used as a basis for probable cause. *Spinelli,* as we pointed out in *Price v. State,* 7 Md. App. 131, would seem to require, in substance, that the informer's tip, to constitute probable cause in a constitutional sense, show, first, "underlying circumstances" such as would enable a magistrate or reviewing court independently to judge the validity of the informer's conclusion that a crime was being committed, or, as here, that evidence thereof was to be found in the automobile of the accused; and, secondly, there be set forth information showing that the informer was "credible," or his information "reliable." If the informer's information does not meet these requirements, as postulated in *Spinelli,* then the question is whether, under *Draper*—where the reliability of the informer is clearly shown—is his information so sufficiently detailed that, when corroborated, it becomes at least as trustworthy as a tip meeting *Spinelli* requirements without independent corroboration. When it is, it becomes apparent, observed the court in *Spinelli,* that the police were relying on something more substantial than casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation; on the contrary, such information is of a sort which, in common experience, may be recognized as having been obtained in a reliable way, so that a judicial officer, when confronted with such detail, could reasonably conclude

that probable cause existed in the constitutional sense. See *Frey v. State,* 3 Md. App. 38. Within these principles, we think it clear that even though there was no showing in the instant case how the informer received his information that appellant would be carrying narcotics in his automobile, nevertheless, probable cause was plainly shown under the rationale of *Draper.*

Appellant's further contention that the evidence was insufficient to support the conviction is based on the premise that the articles seized from his vehicle were not properly admissible in evidence at the trial. As we have held otherwise, it is apparent that there was sufficient evidence to support the convictions.

*Judgments affirmed; costs to be paid by appellant.*