## DARRELL CRAIG OBERLIN *v.* STATE OF MARYLAND

[No. 457, September Term, 1969.]

*Decided May 8, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

Raymond W. Russell for appellant.

James L. Bundy, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County, and Barry H. Helfand, Assistant State's Attorney for Montgomery County, on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

On October 11, 1968 appellant was charged in a two count indictment with unlawfully possessing and controlling marihuana in violation of Maryland Code, Article 27, Section 277.[1] On April 14, 1969, the court sitting without a jury found him guilty of unlawful possession, the State earlier having abandoned the count charging control.

On July 3, 1969 appellant—a first offender—was sentenced to five years imprisonment and fined $1,000. On review of the sentence by a three-judge panel, as authorized by Maryland Code, Article 26, Section 132, it was reduced to three years; the $1,000 fine remained unchanged. On this appeal, it is claimed by appellant that as he was illegally arrested, the subsequent search of his automobile and seizure therefrom of a quantity of marihuana was likewise illegal; and that the admission into evidence of the incriminating marihuana, over his objection, constituted reversible error.

At the trial, Robert Stutman, a special agent of the Bureau of Narcotics and Dangerous Drugs, testified that for nine months prior to arresting appellant he had him and his companion, William Gatlin, under investigation for suspicion of illegally possessing marihuana; that he had "received information" that on the evening of July 26, 1968 appellant "would be picking up a quantity of marihuana" at Gatlin's apartment; that he (Stutman),

---

1. "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotics drug, except as authorized in this subtitle."

accompanied by other officers, went to the area of Gatlin's apartment at 7:00 p.m. on July 26; and that they observed appellant arrive at Gatlin's apartment at 7:30 p.m., leave at 8:30 p.m., return at 9:45 p.m., and leave again at 11:00 p.m. carrying "a brown paper shopping type bag," which he put in the back seat of his automobile. Stutman testified that appellant then drove off; that they followed him "in an official government vehicle" and when appellant stopped his car at a stop sign, they pulled up very close alongside him—"two or three inches away," —at which time he (Stutman) observed "the paper bag in the back seat, opened at the top, and I could see a white, brick-shaped form which appeared to me to be, in my opinion, a brick of marihuana"; that at this time he (Stutman) "hit the siren" of his car, got out of his vehicle and yelled to appellant: "Federal agent. You're under arrest"; and that appellant then attempted to drive off, but was prevented by the officers from doing so. Agent Stutman gave a detailed account of his background and experience. At the time of the arrest, he had been an agent for three and one-half years; he was a graduate of the Treasury Law Enforcement Officer Training School and of the Advanced School of the Bureau of Narcotics; he had worked in an undercover capacity in the Dupont Circle area of the District of Columbia for seven months during which he saw marihuana purchased "hundreds of times" and participated "in hundreds of arrests in which I have seen marihuana both in loose form and in brick form"; he described a brick of marihuana as "approximately the size of a regular household brick," and said it was "usually wrapped in white paper." The evidence showed that the bag seized from appellant's car contained five bricks of marihuana, the one on top, at least, being wrapped in white paper.

Ordinarily, where an arrest is initiated on hearsay information received from an informer, the State to establish its legality where challenged should sufficiently inform the trial judge of some of the underlying circumstances from which the informer concluded that a crime

was being or had been committed by the person to be arrested, and some of the underlying circumstances from which the police concluded that the informer was credible or his information reliable. See *Spinelli v. United States,* 393 U. S. 410; *Mullaney v. State,* 5 Md. App. 248. That the State did not, at the trial, establish the reliability of Stutman's informer is entirely clear; [2] that his reliability cannot be established *solely* by reason of the fact that his information proved accurate is equally clear. See *Bolesta v. State,* 9 Md. App. 408. Had the officers arrested appellant as he emerged from Gatlin's apartment carrying the brown paper bag solely on the basis of the informer's tip, coupled with their own then limited observations, the arrest would not have been lawful. But we think that under the circumstances of this case Agent Stutman had probable cause to believe that appellant was carrying marihuana in his vehicle when, without either a trespass or a search, he observed the bag in plain view on the seat of the car, its contents sufficiently exposed to permit him, based on his experience and training, to conclude that what he saw was probably a brick of marihuana in its customary white wrapping. We held in *Taylor v. State,* 9 Md. App. 402, that the expertise of the officer in narcotics cases may be an important factor in assessing the existence of probable cause. Where then, as here — the expertise of Agent Stutman being so clearly shown by the evidence—he testified, with specificity, with respect to his reason for concluding that the bag con-

---

2. At a pre-trial hearing held to determine the merits of appellant's motion to suppress the marihuana, the State put on substantial evidence in proof of the informer's reliability. The hearing judge held the arrest lawful and refused to suppress the evidence. At the trial held several months later, the trial judge made it clear that he did not intend to be bound by the earlier ruling, but would consider the question of the legality of the arrest *de novo,* as authorized by Maryland Rule 729 g 2. Under the circumstances, the trial judge did not have before him, when making his ruling that the seizure was lawful, any evidence with respect to the informer's reliability. In reviewing the validity of the trial judge's determination, we do not, of course, give any consideration to the evidence of the informer's reliability adduced at the pre-trial hearing.

tained marihuana, we think a sufficient evidentiary foundation was provided to enable the trial judge to intelligently assess whether Stutman's belief had a factual basis amounting to probable cause in the constitutional sense. Cf. *Taylor v. State, supra.* That appellant attempted, prior to his arrest, to flee the scene when accosted by the officers undoubtedly did much in Stutman's mind to fortify the validity of his conclusion. In any event, we hold the seizure of the marihuana lawful either as the incident of a valid arrest based on probable cause to believe that appellant was committing a felony (see *Simms v. State,* 4 Md. App. 160), or on the ground that the seizure was justified because there was probable cause to believe that the vehicle harbored contraband, fruits, instrumentalities, or evidences of a crime (see *Johnson v. State,* 8 Md. App. 28). See also *Draper v. United States,* 358 U. S. 307; *Owings v. State,* 8 Md. App. 572; *Price v. State,* 7 Md. App. 131.

Appellant next contends that his conviction for unlawful possession of marihuana must be reversed because the law under which he was convicted was repealed during the pendency of his appeal by Ch. 237 of the Acts of 1970 —an emergency bill which took effect on April 15, 1970. That Act repealed and reenacted, with amendments, Section 300 of Article 27 of the Code—the penalty section of the Maryland Uniform Narcotic Drug Act under which appellant's sentence was imposed. Specifically, Chapter 237 amended Section 300 (a) by excluding from inclusion therein as a felony, and from the penalties thereby provided for violations of Sections 277,[3] 291,[4] and 295,[5] violations of such sections involving "the product generally known as marihuana"; it then provides in new subsection (b) that any person who violates the provisions of Section 277 "with regard to the possession or use" of

---

3. See footnote 1.
4. This section proscribes, *inter alia,* the maintaining of designated places resorted to by narcotic addicts.
5. This section proscribes, *inter alia,* the illegal obtaining of narcotic drugs by fraud, deceit or forgery.

marihuana shall be guilty of a misdemeanor, the sentence for which shall not exceed, for the first offense, imprisonment for one year or a $1,000 fine, or both; [6] new subsection (b) further provides that for a second offense—or for a first offense where the offender was previously convicted of violating the laws of the United States or another State, or District "relating to the possession, use or sale of narcotic drugs or marihuana,"—the sentence shall be twice that authorized for a first offense; the subsection provides more severe penalties for subsequent offenses. New subsection (c) of Chapter 237 provides that any person who violates the provisions of Section 277 "with regard to the sale, dispensing, giving away, or otherwise disposing" of marihuana shall be guilty of a felony, the penalty for which—depending upon whether it is a first or subsequent offense—ranges from imprisonment for not more than five years and a $15,000 fine or both to ten years and a $30,000 fine, or both.

Section 2 of Chapter 237 specifies that "the provisions of this Act shall apply to any proceedings not finally adjudicated on the effective date of the Act."

We think it clear that nothing in Chapter 237 compels reversal of appellant's conviction. It is settled law in Maryland "that the repeal of a statute creating a criminal offense after conviction under the statute but before final judgment, including the final judgment of the highest court empowered to review the conviction, requires reversal of the judgment, because the decision must accord with the law as it is at the time of final judgment." *Bell v. State*, 236 Md. 356, 363, citing *Keller v. State*, 12 Md. 322, and *State v. Clifton*, 177 Md. 572. The rule has been applied "to situations where the legislature has not repealed the prior law expressly or in terms but has passed a subsequent independent act, complete in itself, the terms of which necessarily were repugnant to or destroyed the earlier act, in whole or in part, and so had ef-

---

6. Section 277 does not by its express terms proscribe "use" of narcotic drugs. See *Franklin v. State*, 8 Md. App. 134.

fected a repeal or amendment by implication." *Bell v. State, supra,* at page 363, citing *Davis v. State,* 7 Md. 151.

Chapter 237 does not, either expressly or by implication, repeal the offense proscribed by Section 277 of unlawfully possessing marihuana; on the contrary, it preserves the offense, changing only the criminal sanctions for its commission by reclassifying it from a felony to a misdemeanor, and reducing the penalties therefor. Similarly, the Act preserves, as a felony, the offenses proscribed by Section 277 of unlawfully selling or dispensing marihuana, and instead of decreasing the range of authorized penalties for the offenses, the Act increases it.

By specifying that the "provisions" of Chapter 237 apply "to any proceedings not finally adjudicated on the effective date of the Act," the legislature obviously did not intend to mandate reversals of all non-final marihuana related convictions secured under Section 277, 291, or 295. Nothing in the "provisions" of Chapter 237 even remotely suggest such a consequence, the legislature being presumed to know as a matter of law that had it so intended, it would have been necessary under Maryland Code, Article 1, Section 3, that it expressly so state.[7] See *Bell v. State, supra,* at page 368. We think the "provisions" of Chapter 237, which by Section 2 of the Act apply to "proceedings not finally adjudicated on the effective date of the Act," require no more than this—that persons convicted of marihuana violations of Section 277, 291, or 295, but whose judgments were not final on April 15, 1970, may avail themselves of the benefits of the Act, viz., the reduction in the criminal penalties and, where

7. This section provides, in part:
"The repeal, or the repeal and reenactment, or the revision, amendment or consolidation of any statute, or of any section or part of a section of any statute, civil or criminal, shall not have the effect to release, extinguish, alter, modify or change, in whole or in part, any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute, section or part thereof, unless the repealing, repealing and reenacting, revising, amending or consolidating act shall expressly so provide; * * *."

applicable, the change in the grade of the offense (from felony to misdemeanor).[8]

As appellant appears to be a first offender, and his conviction was for unlawful possession, his sentence must be vacated and his case remanded for the imposition of a new sentence under Chapter 237.

At the same legislative session at which it enacted Chapter 237 as an emergency measure, the General Assembly also passed Chapter 403 of the Acts of 1970, to become effective July 1, 1970. That Act repealed the existing criminal laws relating to narcotic and other dangerous drugs set out in Article 27, Sections 276 through 313D of the Code; it enacted, in lieu thereof, new Sections 276 through 302 of Article 27. By its title, the Act purports to revise generally the law relating to the subject of dangerous drugs and to provide "a comprehensive set of schedules, regulations, offenses, and penalties" for such substances.

Section 276 of the Act declares it to be the purpose of the new law "to establish a uniform law controlling the manufacture, distribution, possession, and administration of controlled dangerous substances and related paraphernalia * * *." Section 279 (a) sets forth four comprehensive "schedules" of "controlled dangerous substances," grouped by their differing characteristics. Sections 286-290, inclusive, set out with considerable specificity a number of criminal offenses and these appear in some instances graded according to the particular "schedule" under which the "controlled dangerous substance" involved in the violation is classified. The criminal penalties for violations of these sections are set out in comprehensive detail, and we note, for example, that under Section 287 (e) unlawful possession of marihuana not involving a quantity sufficient to indicate an intent to manufacture, distribute, or dispense, is punishable as a misdemeanor

---

8. Urging a contrary result, the appellant relies primarily on *Smith v. State*, 45 Md. 49, and *Meloy v. Scott*, 83 Md. 375. We think neither case is apposite under the facts of the present case.

to the same extent as provided in Chapter 237. Section 302 (a) and (d) respectively provide:

"(a) Prosecutions for any violation of law occurring prior to the effective date of this subheading shall not be affected by these repealers or amendments, or abated by reason thereof."

"(d) The provisions of this subheading shall be applicable to violations of law, seizures and forfeiture, injunctive proceedings, administrative proceedings and investigations which occur following its effective dates."

Considering Chapters 237 and 403 together—the two Acts standing in *pari materia*—we think it altogether plain that prosecutions initiated either before or after July 1, 1970, for offenses committed prior to that date can only be brought under the law existing prior to July 1, 1970. Upon conviction for such offenses, the sentence is that provided by the law in existence prior to July 1, 1970. As to such convictions for pre-July 1, 1970 violations of Sections 277, 291, or 295 involving marihuana which were "not finally adjudicated" as of April 15, 1970, sentence must be imposed pursuant to the provisions of Chapter 237. In this connection, we hold that under Section 2 of Chapter 237 a judgment of conviction has not been "finally adjudicated" until (1) the judgment of conviction has been rendered, (2) the availability of appeal has been exhausted, and (3) the time for petitioning for certiorari to the Court of Appeals of Maryland and to the Supreme Court of the United States has elapsed (without regard to whether any such petition is actually filed).[9] See *Hays and Wainwright v. State,* 240 Md. 482; *Schowgurow v. State,* 240 Md. 121; *Brady v. Warden,* 2 Md. App. 146. In other words, the meaning of "finality" intended by the legislature in Section 2 is that point of time when the courts are powerless to provide a remedy for

---

9. Where no direct appeal from a criminal conviction is filed within thirty days, as required by the Maryland Rules, the judgment thereafter becomes final, and no calculation with respect to the time within which to seek certiorari is involved.

436

the defendant on direct review of his criminal convic-tion.[10] See *Terry v. Warden*, 243 Md. 610.

> *Judgment affirmed, except as to the sentence; sentence vacated; case remanded for imposition of sentence under Chapter 237 of The Acts of 1970 and in accordance with this opinion.*

---

**10.** Persons entitled to the benefits of Chapter 237 may, of course, initiate appropriate proceedings to correct their sentences. See Maryland Code, Article 27, Section 645A and Maryland Rule 764.