CLAYTON IGNATIUS NUTT *v.* STATE
OF MARYLAND

[No. 474, September Term, 1969.]

*Decided May 27, 1970.*

502

The cause was submitted to MURPHY, C. J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Donald Daneman* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph B. Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Clayton Ignatius Nutt (appellant) was found guilty by a jury in the Criminal Court of Baltimore of having a narcotic drug, to wit: Cannibis under his control on 25 October 1968 (2nd count indictment 7507) ; of having a barbiturate, to wit: Pentobarbital under his control the same date (2nd count indictment 7508) ; and of keeping and maintaining a common nuisance, to wit: a dwelling house at 2030 West Lanvale Street on the same date (2nd count indictment 7510). He was given a sentence of five years on each conviction, the sentences to run concurrently.

After the jury was impaneled and sworn, the State, out of the jury's presence, proffered a search and seizure warrant. Appellant moved to suppress all evidence seized thereunder on the ground that the affidavit supporting it did not show probable cause for the issuance of the warrant and the court denied the motion. The sole point on appeal is that the denial of the motion was error. If the affidavit showed probable cause for the issuance of the warrant, the ruling on the motion was proper.

The warrant commanded the search of 2030 W. Lanvale Street in Baltimore City for Robitussin AC, an exempt Narcotic cough medicine, and the narcotic drugs, "Amphetamines, Barbiturates and Marijunia" and if they be found to seize them. The affiant was Sergeant Gilbert O. Derrenberger of the Baltimore City Police Department. Derrenberger had been a member of the Department for sixteen and a half years. At the time he applied for the warrant he was on the Plainclothes Squad of the Western District and had so served for four years. As of 25 October 1968 he had investigated approximately 75 to 80 cases involving prohibited narcotic and dangerous drugs and at the time of trial had "handled approximately 200 narcotic cases."

In *Henson v. State,* 236 Md. 518 at 521 the Court of Appeals discussed probable cause on which a warrant properly may be issued:

> "Probable cause, which is less than certainty or demonstration but more than suspicion or possibility, is to be determined by the judge or justice who issues the warrant, and if a prudent and cautious man would be justified from the facts presented to show its existence in believing that the offense had been or was being committed, the warrant properly may be issued. In making his determination this judicial, hypothetical, 'cautious and prudent man' may give consideration to the special significance which objects, happenings and individuals may have conveyed to the trained, experienced and knowledgeable police officers who apply for the warrant."

In *Henderson v. State,* 243 Md. 342, it observed, at 346-347:

> "There is force in the observations of the Supreme Court in *United States v. Ventresca,* 380 U. S. 102, 13 L.Ed.2d 684, that the requirements of the Constitution are practical and not abstract, that search warrants must be tested and

interpreted by magistrates and courts in 'a commonsense and realistic fashion,' that the preference to be accorded a warrant indicates that in a doubtful or marginal case a search under a warrant may be sustainable, where without one it would fail and that 'a grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting,' and finally that:

'This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar v. Texas, supra* [378 U. S. 114, 12 L. Ed. 2d at 729]. Recital of some of the underlying circumstances in the affidavit is essential [as it is under the Maryland statute] if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States, supra* at 270 [of 362 U. S.].' "

It is established that the finding of presence or absence of probable cause is to be made from the allegations of the application for the warrant. *Scarborough v. State,* 3 Md. App. 208. The application here involved is set out in

Appendix A hereof. We think that the allegations of the application based on the personal observations of Derrenberger and Officer Milton Spencer were sufficient for the issuing judge, acting as the cautious and prudent judicial officer the law requires, to find that there was probable cause to believe that violations of the law against drugs were being committed at 2030 W. Lanvale Street. That the investigation may have been initiated by an anonymous letter and that information was received from a confidential informant whose reliability may not have been sufficiently spelled out in the application did not invalidate the probable cause established by the personal observations of the officers. We find no error in the denial of the motion to suppress the evidence.

This finding, however, does not end our review of the case. Further inquiry is required with respect to the judgment entered on the conviction under indictment 7507. Under that indictment appellant was found guilty of unlawfully having cannabis (generallly known as marihuana) under his control. This offense is proscribed by Code, Art. 27, § 277. That statute declares it to be unlawful for any person "to manufacture, possess, have under his control, sell, prescribe, administer or compound any narcotic drug" except as authorized by the subtitle. Marihuana is a narcotic drug by definition under § 276. The offenses proscribed by § 277 are classified as felonies by § 300 (a) which also authorizes punishment upon conviction of them of a fine of not more than $1000 and imprisonment for not more than 5 years. These laws were in effect at the time of the commission of the offense here charged and at the time of appellant's trial and sentence. While the appeal was pending the General Assembly enacted Ch. 237, Acts 1970, as an emergency measure and it became effective 15 April 1970. It provided by § 2 that its provisions "shall apply to any proceedings not finally adjudicated on the effective date of the Act." Of course, the proceedings in the instant case were not finally adjudicated on 15 April 1970, the appeal being then pending. See *Oberlin v. State*, 9 Md. App. 426 (1970), for the mean-

ing of "finally adjudicated." We discussed Ch. 237 at length in *Oberlin* but within the frame of reference of the offense of possession of marihuana. We found that the Act, while preserving that offense, changed the criminal sanctions for its commission, making them less severe for a first offense—imprisonment not to exceed one year or a fine not to exceed $1000, or both. It also reduced the grade of the crime to misdemeanor. The Act did this by first doing away with all punishments for violations of offenses proscribed by § 277 in which marihuana was involved. Having so wiped the slate clean, it then prescribed punishments for violation of offenses involving marihuana, but in so doing it expressly designated that the punishments applied only to violations of § 277 "with regard to the possession or use" of marihuana,[1] § 300 (b), and "with regard to the sale, dispensing, giving away, or otherwise disposing" of marihuana, § 300 (c). For the offenses specified in § 300 (c) it authorized more severe penalties than were authorized by old § 300 (a). The Act does not expressly prescribe a penalty for having marihuana under control. The question is whether the legislative intent was to obliterate the punishment for the offense of control of marihuana or whether it intended that it be encompassed in the offenses designated. If the former, there is no longer a criminal sanction for a person having marihuana under his control, although it remains designated as a crime by § 277. If there is no criminal sanction for such act, then the Act is not a crime.[2] And a person cannot stand convicted of an act which is not a crime. We think it clear that the legislature equated "con-

---

1. We note that § 277 does not designate "use" of a narcotic drug as a crime.

2. What cannot be punished is not a "crime" within the contemplation of the administration of justice. "Crime is any social harm defined and made punishable by law." *Perkins on Criminal Law* (2nd Ed.), p. 9. "To constitute a crime, behavior must be punished to protect the public generally, and it must be punished by the state or other sovereign power." *Clark and Marshall, Law of Crimes* (6th Ed.), § 2.01, pp. 85-86. "A crime is a wrong, or breach of duty, which subjects the person guilty thereof to punishment at the suit of the public." *Hochheimer, Law of Crimes* (1st Ed.), § 1, p. 1.

trol" with "possession" and did not contemplate that control of marihuana be included among those offenses for which it designated more severe penalties than formerly were authorized. Nor do we think that "control" could be said to be included, as a separate offense in selling, dispensing, giving away, or otherwise disposing in any event. Finding that the basic intent was to equate control with possession, we think that the legislature intended to include the punishment for the control of marihuana in the punishment for the "possession or use" of marihuana. Such a conclusion is consistent with the definition of possession heretofore adopted by us, with holdings in our recent cases, and with the meaning of possession as designated by the legislature in Ch. 403, Acts 1970, which becomes effective 1 July 1970. In *Williams and Williams v. State,* 7 Md. App. 5, 14 the definition of possession we adopted was "the act or condition of having in or taking into one's control or holding at one's disposal." Control is encompassed in this definition by the terms used to state it. Although "possession" and "control" within the contemplation of § 277 have been held to be separate offenses by the Court of Appeals and this Court, see *Bryant v. State,* 229 Md. 531 and *Broadway v. State,* 3 Md. App. 164, we have recently tempered the practical effect when there are convictions of both. We noted in *Haley, et al v. State,* 7 Md. App. 18, note 6 at 33, we thought it clear that if a person has physical possession of a narcotic it is also under his control; thus upon a conviction of a person possessing a narcotic on evidence that he physically possessed it, that is that he was in actual possession of it, a conviction of having the same drug under his control would be duplicitous. In *Agee v. State,* 8 Md. App. 148, 152 we applied this rationale in vacating a judgment as to control of a narcotic drug while affirming the judgment as to possession of it. Then in *Jason, et al v. State,* 9 Md. App. 102, 116, we took the next step. We found that evidence establishing that a person is in constructive possession of narcotics is also sufficient to establish that those narcotics were under his

control. We held that a conviction of possession of a narcotic drug based on constructive possession and a conviction of having that narcotic drug under that person's control, based on the same constructive possession, would be duplicitous so as to preclude the conviction of control. Acts 1970, Ch. 403, declaring its purpose to be "to establish a uniform law controlling the manufacture, distribution, possession and administration of controlled dangerous substances and related paraphernalia", repealed the existing criminal laws relating to narcotic and other dangerous drugs set out in Code, Art. 27, §§ 276-313 D and enacted in lieu thereof new §§ 276-302. It designated marihuana as one of the controlled dangerous substances, § 279 (a) c 7. It provided that possession "shall mean the exercise of actual or constructive dominion or control over a thing by one or more persons." Section 277 (s). We discussed Ch. 403 in *Oberlin v. State, supra* and said that it and Ch. 237 stand in *pari materia*. We hold that by Ch. 237 there is a punishment provided for control of marihuana and that it is that which is designated for the "possession or use" of marihuana. Thus appellant's conviction of having marihuana under his control stands but his sentence thereon cannot exceed one year as he was not prosecuted as a subsequent offender. Since he was sentenced to 5 years the sentence must be vacated, and a sentence imposed which is within the authorization of Ch. 237. We note that he now stands convicted of a misdemeanor under indictment 7507 and not a felony.

> *As to each of indictments 7508 and 7510: judgment affirmed; as to indictment 7507: judgment affirmed, except as to the sentence; sentence vacated; case remanded for imposition of sentence under Chapter 237, Acts 1970 and in accordance with this opinion; appellant to pay costs.*

## APPENDIX A

## SUPREME BENCH
## OR
## MUNICIPAL COURT
## OF
## BALTIMORE CITY

OPERATIONS BUREAU
APPLICATION FOR SEARCH AND SEIZURE WARRANT
POLICE DEPARTMENT Form 67/188

To the Honorable Judge (a) Henry W. Stichel, JJ. of the (b) Municipal Court of Baltimore City the undersigned being duly sworn deposes and says that he has reason to believe that (on the premises known as) (c) 2030 W. Lanvale St., A two story brick dwelling in the City of Baltimore there is now being concealed certain property, namely; (d) Robitussin AC, an exempt Narcotic Drug cough medicine; Narcotic drugs, to wit: Amphetamines,

(describe property to be seized—use continuation
sheet if necessary)

Barbiturates, and Marijunia which (are) (in violation of the Laws of Maryland) pertaining to (e) Article 27 section 125 (Disorderly House) ; Article 27 sections 276-

(give grounds for search and seizure)

306 (Narcotic Laws)
AND that the facts tending to establish grounds for issuance of Search Warrant are set forth in the Affidavit (s) attached thereto and made a part thereof
WHEREFORE your affiant pray (s) that a Search and Seizure Warrant be issued for said (f) 2030 W. Lanvale St., a two story brick dwelling

Sergeant Gilbert O. Derrenberger

(g) ......... ... . .. . ........ ......................... ...... ...

Signature of Affiant

Sergeant

(h) ... . .. ......... . ... ................ . ....... . . .

Official Rank or Title (if any)

SWORN to before me and subscribed to in my presence this Twentyfifth day of October, 1968

Henry W. Stichel, J.
JUDGE

510

## POLICE DEPARTMENT

CITY OF BALTIMORE

OPERATIONS DIVISION
AFFIDAVIT
Form 67/189

24 October 1968

After receiving an anonymous letter dated 9-20-68 signed, "the neighbors of the 2000 block of W. Lanvale St." concerning dope traffic at 2030 and 2004 W. Lanvale St., We started an investigation and observation in the area.

On 18 October 68 I received information from a confidential informant who has given me reliable information in the past that the Dope house at 2004 W. Lanvale St. was moved to 2016 W. Lanvale St. after the Police raided it in August 68. The informant reports that both houses, that is 2030 and 2016 Lanvale St. were going for business 24 hours a day, and you can obtain Pot (Marijunia), Pills — Yellow Jackets (Phenobarital) and Red Devils (Amphetamines & Barbiturates). There is also big business in the sale of AC (Robitussin AC, an exempt narcotic cough medicine) at both locations.

About 1:15 Pm, 22 October 68, Your Affiants, Sgt. Gilbert Derrenberger and Officer Milton Spencer were eating lunch at James Lunchroom, 2018 Edmondson Ave. when two Negro Males entered and stood at the carryout section about five feet from where we were setting in a booth. Number one male described as C M 19 5/9 150 Med Complexion wearing green pants, White shirt and a black cloth jacket was talking to number two described as a C M 18 5/6 140, dark complexion wearing gray pants and shirt with a light grey jacket about getting some Pot (Marijunia). Number two male stated, "that he hasn't seen Bennie today but we could go up to lanvale st. and get some." After obtaining their purchases, they walked out of the lunchroom and went north on Pulaski St. We then left the lunchroom and observed the two males setting on the first pair of steps on pulaski St. north of Ed-

mondson Ave. eating a hotdog and drinking an orange soda. We got into the radiocar and went to the Acme Stores Parking lot in the 800 block of Bentalou St. where we could observe the area of the 2000 block of Lanvale st. with the aid of Field Glasses. About that time, we observed the aforementioned two males come north on Pulaski St. and turn east on Lanvale St. crossing over to the north side of the street. They both entered 2030 Lanvale St. About two minutes later, both came out of 2030 Lanvale st and walked east and entered 2016 Lanvale St. About five minutes later, they both came out of 2016 and stood on the sidewalk in front of this location. the number one male gave what appeared to be two or three cigarettes to the number two male putting two or three of the cigarettes into his own pocket. They then walked east on Lanvale St. and North on Payson St. out of our view. We left our location and headed east across the Lafayette Ave bridge toward Payson St. to accost these subjects. As we neared the intersection of Payson and Lafayette Ave. we observed the two subjects and they in turn saw us. They ran west in an alley alongside of the bridge and disappeared before we could get close to them. We believed the cigarettes that we saw them in possession of was made from Marijunia.

About 1:15 PM, 22 October 68 Your Affiants were observing the 2000 block of W. Lanvale St. In front of 2030 Lanvale St. there were two colored females and four colored males. In a fifteen minute period, they conversed with each other and each made one trip into the house. Eventually, they all entered the house at 2030 Lanvale St. and did not come out. At 1:35 PM a Colored male walked north on Pulaski St. to Lanvale crossing over to the north side of Lanvale St. and entered 2030 Lanvale St. He is described as a C M 25 5/10 160, light complexion with a mushach wearing Blue pants and jacket. He stayed for about 15 minutes and upon leaving, he appeared to be staggering when he walked east. Upon arriving at the front steps of the first house west of Brice St., he set down on the steps and appeared to go to sleep. Because

512

of the short period of time between seeing this subject apparently sober and seeing him staggering when he left this house we believe, based on our experience as vice Officers that he had taken a narcotic drug inside of this house and was now under its influence.

At 2:05 PM five colored males got out of an automobile which was parked on the south side of Lanvale St. across from 2030 Lanvale. They were all in their 20's. Two of the subjects were carrying cardboard boxes. One box is described as being 6 inches high, 10 inches wide and 18 inches long. The other box was about 8 inches square and 20 inches high. We know from our experiences that the cough medicine Robitussin AC is transported in boxes of this size. The small box packageing 24 six oz. bottles and the long box packageing a one gallon bottle. Robitussin AC is an exempt narcotic drug and contains the following ingrediences: 10.0 Mg Codeine phosphate, 100.0 Mg Glyceryl Guaiacelmte, 7.5 Pheirmine, and 3.5% Alcohol in each 5 CC teaspoon. A Warning on the label indicates that it may be habit forming. All five of these subjects entered 2030 lanvale St. About five minutes later, the subject carrying the flat box left 2030 with the box and went to 2016 Lanvale St. He entered the house and stayed about two minutes and then returned to 2030 without the box. At 2:30 PM two colored females and one colored male left 2030 and walked east. As they past the house where the staggering colored male was setting, they stopped and shook him until he wokeup. He stood up and leaned against the front wall of the house. The trio then continued east and entered 2016 Lanvale St. The staggering male went around the corner and headed north on Brice St. out of our view. We then left the area.

At 2:45 PM we returned to the area of Brice St. under the Lafayette Ave. Bridge Officer Spencer then walked south on Pulaski St. to the alley in the rear of the 2000 block of Lanvale St. While walking east in the alley, he observed about 8 or 10 empty bottles of Robitussin Cough medicine. In the rear yard of 2030 Lanvale St. In the rear of 2016 Lanvale St. he observed four empty bottles with

the labels indicating that they were used to hold Robitussin AC. He then returned to the car and we left the area.

On 24 October 68 between the hours of 8:00 PM and 9:30 PM Officer Milton Spencer went to the area of the 2000 block of Lanvale St. and observed the following. Between 8:00 PM and 8:20 PM—3 C M's and 1 C F entered 2016 Lanvale St. about 8:25 PM a C M 17-20 5/9 dark brown skin 125 lbs. walked to 2016 Lanvale St. knocked on the front door. A C M about 21 years looked out of the second floor window and asked him what he wanted. The C M said, I want three Pops. The C M on the second floor went back into the house out of his view. the C M at the front door stepped into the vestibule. About two minutes later the C M who was on the front vestibule left the house and as he passed Officer Spencer who was setting in his private Auto, he removed a bottle of brownish liquid from a brown bag and placed it in his pants pocket. He then walked south on Payson St. out of view. About 8:45 PM two C M's left 2016 Lanvale St. and walked west on Lanvle st. Both appeared to be staggering. They entered 2030 Lanvale St. out of view. At 9:00 PM, two more C M's left 2016 lanvale. One subject abour 20, six foot tall said, "That bitch drank all the AC man". The other male about 20 5/9 said, Come on man, I can get some more. They both then walked to 2030 Lanvale St. and entered going out of view. Officer Spencer then left the area.

Your Affiants believe that from the facts set forth in this Affidavit, they have Probable Cause to believe that 2030 W. Lanvale St described as a two story brick dwelling with white frames and the numbers 2030 over the front door and 2016 W. Lanvale St. a two story brick dwelling with white frames and the numbers 2016 over the front door are Disorderly houses where exempt narcotic cough medicine, to wit Robitussin Ac is sold and consumed on the premises. We also believe that Narcotic drugs in the form of Amphetamines, Barbiturates, and Marijunia are being sold and used on the premises of the

two locations. Your Affiants therefor pray that his honor issue Search and Seizure Warrants for both 2030 and 2016 Lanvale St. which will abate this complaint.

Respectfully
Sgt. Gilbert Derrenberger
Off. Milton Spencer
HWS/JUDGE