GEORGE LEE JORDAN *v.* STATE OF MARYLAND

[No. 391, September Term, 1972.]

*Decided February 23, 1973.*

The cause was argued before THOMPSON, CARTER and SCANLAN, JJ.

*Gerald A. Kroop* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Mark Van Bavel, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellant, George Lee Jordan, was found guilty of resisting arrest following a trial without a jury before Judge J. Harold Grady in the Criminal Court of Baltimore, and sentenced to nine months.

Appellant argues on this appeal that he was justified in resisting arrest because his arrest was illegal, in that the police lacked probable cause to believe that he had committed any crime. He also contends that even if the arrest were legal, he was entitled, under the attendant circumstances, to have used reasonable force in resisting the police officers. The evidence disposes of his first contention; sound public policy requires repudiation of his second.

## I

### THE POLICE HAD PROBABLE CAUSE FOR MAKING THE ARREST

In the early morning hours of October 1, 1971, Detectives Lipka and Johnson were "staked out" in the 2200 block of North Calvert Street in Baltimore. Approximately three days earlier they had driven a "reliable informant" to the area and had him make a "controlled

buy" of narcotics from 2214 North Calvert Street. This informant gave the detectives information that different people were picking up drugs from and delivering them to that location. He described one of these individuals as a "male Negro, 20 to 25, operating a green Lincoln, license number HN-6061." On the night of the incident, the green Lincoln arrived at the North Calvert Street address and a man fitting that description emerged from the car and entered the suspected premises. Some time afterward, the same man returned to the vehicle and sped away. The detectives followed, observing that the driver of the green Lincoln car took "evasive action" as he drove. Arriving at the 400 block of 22nd Street, the driver of the Lincoln parked the car. As the driver was getting out the detectives arrived and drove along side of the Lincoln. Detective Lipka emerged from the police car displaying his badge and said: "Police." At that point, appellant quickly placed glassine bags to his mouth. The detectives then approached the man who pushed Detective Lipka out of the way and tried to run west on 22nd Street. A struggle then ensued during which appellant was taken into custody.

The appellant contends that Detectives Lipka and Johnson did not have probable cause to arrest him when they followed his car from 2214 North Calvert Street to the 400 block of 22nd Street, Baltimore. This contention is grounded on the claim that the information furnished by the informant, and on the basis of which the two detectives followed appellant's green Lincoln, was legally insufficient in that (a) it was not shown that the informant was credible or his information reliable, and (b) the basis of the informant's knowledge was not demonstrated. *Aguilar v. Texas,* 378 U. S. 108 (1964); *Spinelli v. United States,* 393 U. S. 410 (1969).

Without more, the appellant's point might have persuaded us. The record shows that the basis for the informant's knowledge was not disclosed at the trial, one of the police officers having testified that he had no

knowledge of how the informant knew that the person driving a green Lincoln was picking up and dropping off drugs.

However, we do not have to decide whether the detectives had probable cause to arrest the appellant when they followed his car from their stake out to the 400 block of 22nd Street, Baltimore, in the early morning of October 1, 1971. Prior to arresting the appellant the detectives saw him place glassine bags to his mouth. Both were experienced police officers. Detective Lipka, for example, had participated in approximately 150 narcotics arrests during his service on the police force. We have held that the "expertise of the officer in narcotics cases may be an important factor in assessing the existence of probable cause." *Oberlin v. State,* 9 Md. App. 426, 430, 265 A. 2d 275 (1970). When the detectives witnessed the appellant swallowing the glassine bags, they had probable cause to arrest him. Article 27, Section 594B (b) of the Md. Code (1971 Repl. Vol.), provides that:

> "A police officer may, when he has probable cause to believe that a felony or misdemeanor is being committed in his presence or within his view, arrest without a warrant any person whom he may reasonably believe to have committed such offense."

Whether or not the police officers intended to arrest the appellant when they pulled their vehicle along side his car is not clear from the record. However, what is certain is that the arrest of the appellant did not occur until *after* he had placed the glassine bags to his mouth, following which the detectives attempted to apprehend him. In *McChan v. State,* 238 Md. 149, 157, 207 A. 2d 632 (1965), the Court of Appeals said:

> "An arrest has been defined as 'the detention of a known or suspected offender for the purpose of prosecuting him for a crime.' *Cornish*

*v. State,* 215 Md. 64, 67, 137 A. 2d 170, 172 (1957). As that case points out *there is a detention only when there is a touching by the arrestor or when the arrestee is told that he is under arrest and submits.* Where there is no touching, the intention of the arrestor and the understanding of the arrestee are determinative, for in order for there to be an arrest in such case, there must always be an intent on the part of one to arrest the other and an intent on the part of such other to submit." (emphasis added).

In the instant case, the resistance which he put up demonstrates that the appellant had no intent "to submit" to the arrest. There was, however, a "touching" of the suspect, but this did not take place until *after* he had provided the police with good cause to arrest him by placing glassine bags in his mouth, an incriminating digestive feat to which the police officers were eyewitnesses.

Almost on all fours with this case is our decision in *Cuffia v. State,* 14 Md. App. 521, 287 A. 2d 319 (1972). There, an appellant disputed that information received from an informant with respect to violation of the lottery laws supplied probable cause to arrest him. However, as the police officer closed in on Cuffia he noticed that the suspect had moved his hand to his mouth. In affirming Cuffia's conviction for violation of the lottery laws, we said that:

> "Even if we were to assume, however, that 'probable cause' to affect the arrest did not exist at the time that Officer Mitchell, with badge in hand, approached appellant, we must conclude that the appellant's movement of his hand to his mouth, a commonly employed method for destruction through mastication of papers upon which lottery numbers are written, would have immediately given rise to a rational

inference that appellant was endeavoring to destroy evidence. Only the probability and not a *prima facie* showing of criminal activity is the standard to be applied to determine probable cause. *Westcott v. State,* 11 Md. App. 305, 273 A. 2d 824 (1971) ; *Bauckman v. State,* 9 Md. App. 612, 267 A. 2d 309 (1970)." 14 Md. App. at 528.

Persons who swallow glassine bags, no less than those who attempt to chew up lottery tickets, in eye-sight of investigating police officers, supply "probable cause" for their arrest within the prerequisites of Article 27, Section 594B (b).

## II
## THERE IS NO RIGHT TO RESIST A LAWFUL ARREST

The appellant's second contention is as novel as it is disturbing. He claims that even if the arrest was legal he was justified in resisting because the arrest "gave every indication of being an assault or robbery by neighborhood hoodlums." "How many citizens," he says, "if pounced upon late at night by two men appearing to be denizens of [the] street would have their fear assuaged by a quickly blurted 'police'?" A dispositive answer to the argument is that the facts of the case belie its assertion. The appellant would not have swallowed the glassine bags unless he harbored the reasonable belief that he was being accosted by police officers, rather than being set upon by local toughs. However, because of the public policy considerations involved, we elect to dispose of the point on broader grounds than may be supplied by the particular facts of the instant case.

Maryland always has adhered to the common law rule that one who is illegally arrested may use reasonable force to effect his escape. *Sugarman v. State,* 173 Md. 52, 57, 195 A. 324 (1937). See *Soles v. State,* 17 Md. App. 656. We note, however, that in recent years the

ancient common law rule observed in Maryland and in a majority of American jurisdictions has been criticized by some commentators,[1] has been changed by adoption of the Uniform Arrest Act in four States,[2] and has been altered by judicial decision in one jurisdiction. *State v. Koonce,* 89 N. J. Super. Ct. 169, 214 A. 2d 428 (1965). In the *Koonce* case, the New Jersey court concluded that police officers attempting, in good faith, although mistakenly, to perform their duties in effecting an arrest "should be relieved of the threat of physical harm at the hands of the arrestee." *Id.* at 436.

We will not join the debate over whether the rule that a person has a right to use reasonable force in resisting an *illegal* arrest still has a place in today's heavily urban society. However, under no circumstances will we extend it, as the appellant would have us do, to permit the use of force in resisting a *lawful* arrest.

The law in all American jurisdictions has adopted what is almost a self-evident proposition, *i.e.,* resistance to a lawful arrest is a criminal offense. 5 Am.Jur.2d 792 (1962). As the Court of Appeals stated it in *Preston v. Warden,* 225 Md. 628, 169 A. 2d 407 (1961) : "A refusal to submit to lawful arrest and resistance to an officer of the law in the performance of his duties constitutes an offense at common law . . . and is an offense in this State. *See also Lyles v. State,* 10 Md. App. 265, 268, 269 A. 2d 178 (1970) ; Perkins, *Criminal Law,* 494-496 (2d ed. 1969). Clearly, "it is the duty of the citizen to submit to lawful arrest . . . ." *Matter of Nawrocki,* 15 Md. App. 252, 264, n.8, 289 A. 2d 846 (1972). Of course it is presupposed in such cases that

---

1. Warner, *The Uniform Arrest Act,* 28 Va. L. Rev. 315 (1952); Hall, *Legal Aspects of Arrest,* 49 Harv. L. Rev. 566, 578-92 (1936).
2. The four states are California, Delaware, New Hampshire and Rhode Island. These states have adopted Section 5 of the Uniform Arrest Act, under which a person has a duty to refrain from using force in resisting arrest regardless of whether there is a legal basis for the arrest, provided that he has reasonable grounds to believe that he is being arrested by a police officer.

the arresting peace officer identify himself or make his purpose known. *Presley v. State,* 75 Fla. 434, 78 So. 532 (1918).

The policy which underlies the rule that a person has no right to resist a lawful arrest was referred to by the Florida Supreme Court in *Daniel v. State,* 132 So. 2d 312, 314 (Fla. 1961), where it said:

> "Although it is essential that law enforcement officers be protected from violence by the lawless, nevertheless in order to avail themselves of the protection which the law affords them they must make known their official capacity before exercising the prerogative of arrest with the attendant assault. *Upon thus making themselves known, they then come within the protection of the law, and a citizen is thereupon bound to submit,* at least to the point of ascertaining the character of the charge and the extent of the officer's authority." (emphasis added).

No sound public purpose conceivably would be served in yielding to the appellant's argument that an exception should be made to the general rule that there is no right to resist a lawful arrest when the arresting officer is known as a peace officer to the suspect or has announced his identification or purpose. The fears which the appellant alleges to have experienced when accosted by the two bearded undercover detectives on the streets of Baltimore in the early morning hours must be weighed against the necessity to preserve an orderly society. As the Supreme Court of Alaska said in *Gray v. State,* 463 P. 2d 897, 909 (Alaska 1970):

> "The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. *Any rule which*

*promotes rather than inhibits violence should be re-examined.* Along with increased sensitivity to the rights of the criminally accused there should be a corresponding awareness of our need to develop rules which facilitate decent and peaceful behavior by all." (emphasis added).

The exception which the appellant asks us to engraft on the general rule would "promote rather than inhibit violence." Such has never been the law in this State nor, as far as we have been able to ascertain, in any other jurisdiction. Whether or not the common law concept of self-help may retain viability to the extent that it permits a person to use reasonable force in resisting an *illegal* arrest, we repudiate any attempt to extend its scope so as to justify resistance to a lawful arrest. A police officer's lot is often a dangerous one. The rule for which the appellant argues would increase the danger. Under the uneasy conditions of tension and confrontation which often manifest themselves in present society, such a rule has no place in law or in public policy.

*Judgment affirmed; costs to be paid by appellant.*